# City Council of Montgomery *v.* Montgomery Water-Works.

79   233
f125  641

*Action against Municipal Corporation, by Water-Works Company.*

1. *Action against municipal corporation, for water supplied for sanitary purposes; contract ultra vires.*—The defendant in this case, a municipal corporation, having power under its charter to contract with plaintiff for a supply of water to be used in flushing sewers and extinguishing fires, an action lies to recover the agreed price of the water supplied and used in any one year, without regard to the power of the corporate authorities to enter into a valid contract for water for a term of twenty years or more.

2. *Same; set-off or recoupment of damages on account of deficiency in quantity or quality of water.*—In such action against the corporation, the defendant can not be allowed to set off or recoup damages sustained by private persons, citizens and property owners, on account of property destroyed by fires by reason of the insufficiency of the water supplied by plaintiff to extinguish fires; and if the defendant could, in any case, recoup damages on account of the defective quality of the water supplied, the question is not properly raised by the pleadings.

3. *Same ; evidence of custom in other cities, as to use of water.*—Evidence of an alleged custom in other cities, having water-works, to use for sanitary purposes, flushing sewers, &c., water drawn through fireplugs, is not competent or admissible for the defendant, in the absence of evidence as to the terms of the contracts under which the water was supplied and used in those cities.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JAMES E. COBB.

These two cases were argued and submitted together, involving substantially the same points; but the actions were commenced on different days, one being brought on the 20th November, 1883, and the other on the 19th May, 1885. The Montgomery Water-Works, a private corporation, the successor of the Montgomery Water-Works Company, was the plaintiff in each case, and sought to recover for water supplied by plaintiff to defendants for sanitary purposes and for extinguishing fires. The Montgomery Water-Works was chartered by an act approved February 15th, 1867, for the term of twenty-five years; and by a subsequent act, approved March 2d, 1871, the time limited for its organization was extended to February 15th, 1873. On the 2d June, 1873, an ordinance was passed by the city council of Montgomery, " granting to the Montgomery Water-Works Company the right to lay down and use iron water-mains, pipes and aqueducts, to and in the city of Montgomery, in conformity with the amended charter of said company, approved March 2d, 1871." The material parts of this ordinance are found in the 3d and 5th sections, as follows : *Sec.* 3. " Be it further ordained, that the said city shall furnish the fire-plugs for said company, and have the same erected, they remaining the property of the city ; and shall pay to the said company, for the use of the first one hundred plugs, seventy-five dollars *per annum* for each plug, and for the second hundred fifty dollars for each plug, said plugs to be located at such places as may be selected and designated by the said city council ; and the said city council hereby agrees to locate the first one hundred plugs so soon as the pipes are properly laid and distributed, and to locate the others as the wants of the city may from time to time demand, paying only for those located and ready for use, at the prices hereinabove specified." *Sec.* 5. " That the said water-works company shall furnish to the said city for its use, and to the citizens for their use, an abundant supply of good water, at rates not greater than the prices charged in other cities similarly situated ; and in the event that the price can not be agreed on, then the company shall select two arbitrators, and the said city council shall select two, and the four thus selected shall choose a fifth ; and the arbitrators thus selected, or a majority of them, shall, by an award in writing signed by them, fix the maximum rates and price to be paid to the said company by the said city and its citizens, during the continuance of their charter, for all water furnished them by said company, except for the fire-plugs as hereinabove provided."

In the first action, commenced November 20th, 1883, the plaintiff claimed " ten thousand dollars damages, for this : that said defendant, by an ordinance adopted on June 2d, 1873,"

authorized the Montgomery Water-Works Company, its suc-
cessors and assigns, to introduce and lay down its water-mains
and pipes in and through said city ; "and contracted and agreed
that said city should furnish certain fire-plugs for said company,
and have the same erected, and should pay to said company,
for the use of the first one hundred plugs, seventy-five dollars
*per annum* each, and for the second hundred fifty dollars *per
annum* each ; the said company agreeing and undertaking on
its part to furnish, through said fire-plugs, the water needed for
protection against, and the extinguishment of fire in said city,
and for other purposes incident to the fire department of said
city ; that said defendant, by said ordinance, further contracted
and agreed that said company, for an abundant supply of good
water furnished for said city and its citizens, should be paid, in
addition to said pay for said fire-plugs, at rates not greater than
the prices charged for water in other cities similarly situated,
any disagreement as to such prices, except for said fire-plugs,
to be determined by arbitration ; that said company, under and
pursuant to said ordinance and contract, laid mains and pipes in
said city, and furnished an abundant supply of good water for
the fire-plugs erected and furnished by the city, and for all
other wants of said city ; that said defendant, in addition to
the water used through plugs for the purposes aforesaid, has
used large quantities of the water supplied by said company
as aforesaid for said city and its citizens, in flushing and wash-
ing out the sewers, drains, and streets thereof ; that said
defendant refused to agree upon the price to be paid for said
water so used, or to permit the same to be referred to arbitra-
tion, as provided in said ordinance and contract, and thereupon
said company, on August 16th, 1878, notified said defendant
that water used for flushing and washing out said sewers and
drains, and for cleansing them and the streets, would thereafter
be charged for at the rate of fifteen cents for one thousand
gallons, which said rate was and is not greater than the prices
charged for water in other cities similarly situated ; and from
henceforth hitherto the defendant has continued to use the
water so furnished, for the purpose aforesaid, using and con-
suming therein and therefor large quantities, to-wit, ten
millions of gallons in each year, worth, to-wit, $10,000." The
complaint then averred plaintiff's purchase, in 1879, of the
franchise and property of said original company, "including
its said claim against said defendant for water so furnished
prior to that time, which were duly transferred and assigned to
plaintiff ; and thereafter said plaintiff, under and pursuant to
said ordinance and contract, furnished said water so used as
aforesaid by said defendant for flushing and cleansing said
sewers, drains, and streets.   Yet said defendant, though often
requested, has failed and refused to agree with plaintiff upon

the price of said water, and has failed and refused to submit such price to the determination of arbitrators, as stipulated in said ordinance and contract, and has wholly failed and refused, and still refuses to pay for said water so used by it in flushing and cleansing the sewers, drains and streets of said city. Wherefore plaintiff sues."

The defendant filed eight special pleas to this complaint. The first plea denied the plaintiff's corporate capacity, and the second and third were the statutes of limitations of three and six years. The fourth plea alleged that, at the date of said ordinance and contract, the defendant was prohibited by its charter "from contracting any debt, or incurring any liability in the future, for or on account of the city of Montgomery, except such as shall be paid out of the ordinary current revenue collected in the year the debt or liability is contracted;" that said ordinance and contract was therefore *ultra vires* and void, and defendant was only liable each year, from and after the year 1873, to pay to said original water-works company, and afterwards to plaintiff, "the reasonable value of the water used by this defendant during each of said years;" and that it has already paid to plaintiff, and to its predecessor, more than the reasonable value of all the water so used, and therefore owed nothing.

The fifth plea alleged, that the original company, its successors and assigns, by the terms of said ordinance and contract, was bound to furnish, through said fire-plugs, "the water needed for protection against, and the extinguishment of fires in said city, and for other purposes incident to the fire department of said city;" that they failed to supply the water necessary for these purposes, by reason whereof, on divers occasions, during the year 1875 and each succeeding year, destructive fires occurred in said city, which, if water had been supplied as needed, would have been wholly or partially avoided; that the citizens of Montgomery, for whose benefit said contract was made, lost $20,000 by reason of these fires, which would not have been lost but for said breach of contract; that there has been, by reason thereof, a failure of consideration to defendant, to an amount exceeding $5,000 annually; and this is set up by way of set-off and recoupment.

The sixth plea alleged, that the plaintiff and its predecessor, in violation of the duty imposed on them by said ordinance and contract, "failed to furnish to this defendant, for its use, or to the citizens for their use, an abundant supply of good water; to defendant's damage, each year, $5,000; which sums, with interest, are claimed "by way of set-off and recoupment."

The eighth plea craved oyer of the ordinance and contract, and alleged that, under said ordinance and contract, defendant

"was entitled to use water from said fire-plugs, for flushing the sewers and drains of the city, upon the consideration of paying for the use of said fire-plugs as mentioned in said ordinance; that the use of fire-plugs, for the purpose aforesaid, is, and was at the date of said ordinance, usual and customary; that this defendant had paid the said water-works company, and plaintiff, for all water not used through said fire-plugs, and also paid all annual dues for said fire-plugs; and that plaintiff's demands are wholly for water used by defendant from and through said fire-plugs, and paid for as aforesaid." Wherefore defendant is not indebted.

The court sustained demurrers to the fourth, fifth and sixth pleas, but overruled a demurrer to the eighth plea. Among the causes of demurrer specially assigned to the eighth plea were these: "Because said plea does not show that it was usual and customary, in the place or neighborhood in which said contract was made, to furnish without extra charge therefor, under such a contract as the one set out in the complaint in this case, water for flushing the sewers and drains of a city; nor does said plea deny that such contract is correctly set out in the complaint." "Because said plea does not show that the alleged custom and usage in said plea set out is such as would be by law attached to the subject-matter of such a contract as the one set out in the complaint in this case, or such as the law would annex to the written terms thereof; and it is not denied that said contract is correctly stated in said complaint." The cause was tried on issue joined on the first, second, third and eighth pleas, and resulted in a verdict and judgment for plaintiff, for $2,181.86.

On the trial, as the bill of exceptions shows, the plaintiff offered in evidence the ordinance showing the contract between the parties; evidence as to the quantity of water consumed by the defendant, for sanitary purposes, in flushing sewers, &c.; the price charged to private consumers, and a written notice served by plaintiff on defendant, dated August 5th, 1878, denying defendant's right to use water through the fire-plugs for sanitary purposes, and stating that plaintiff would in future charge fifteen cents per thousand gallons for water so furnished and used. The defendant then offered in evidence the deposition of J. J. Cross, of New York, a civil engineer, "who had been engaged in the construction and operation of water-works for the supply of towns and cities, most of the time since 1857, and had been so engaged in New York, Brooklyn, Newark, Cincinnati, Indianapolis, Princeton, and other cities." The third interrogatory to this witness, and his answer thereto, were in these words: "*Int. 3.* If you say you have such experience or information, then state whether or not it is customary, in

[City Council of Montgomery v. Montgomery Water-Works.]

cities supplied with water-works, to use water from fire-plugs to flush sewers and drains, or to sprinkle streets, or for any and what sanitary purposes; and whether or not such use was common in the year 1873, and before and since that time." *Answer:* "From my experience and information, I am able to state that, prior to 1873, it was, and still is customary, in cities supplied with water, to use water from fire-plugs for flushing sewers and mains, for sprinkling streets, and for filling cisterns connected with dwellings not otherwise supplied with water." On objection by plaintiff, filed with the cross-interrogatories, the court suppressed this question and answer; to which ruling the defendant excepted. "The defendant offered to prove, also, by the depositions of other witnesses, residing in other cities of the United States, that the use of water from fire-plugs by cities, for flushing sewers and drains for sanitary purposes, was common and general in 1873, in cities supplied with, or having water-works; but the court excluded said evidence from the jury, on the ground that it would vary or contradict the terms of said ordinance, unless it was shown that such use or custom was under contracts similar to that shown by said ordinance. The depositions of said witnesses showed, that the said cities, as to which they so testified, owned the water-works supplying them with water; and some of them showed that the cities, as to which they testified, had special contracts with the water-works companies to pay a given price for water for fire purposes, and a certain other price for water from the fire-plugs for sanitary purposes. To the rulings of the court in excluding this evidence the defendant duly excepted. The defendant introduced, also, evidence tending to show that the average amount of water necessary to furnish cities for fire purposes was one-tenth of one gallon daily for each inhabitant, and three gallons per day for each for fire purposes and sanitary purposes; that the city of Montgomery had a population of about 20,000; that plaintiff's hydrants, about one hundred in number, extended over about two-thirds of the city, and the city had no other means of flushing its sewers and drains than by the use of the fire-plugs for that purpose; and the evidence tended to show that, up to the bringing of this suit, the defendant had paid plaintiff the annual dues specified in the third section of said ordinance for the use of the fire-plugs."

The sustaining of the demurrers to the fourth, fifth and sixth pleas, and the exclusion of the evidence offered by the defendant, as above stated, are now assigned as error.

In the second case, commenced on the 19th May, 1885, the complaint claimed $10,000, "due for water supplied by plaintiff to defendant, and to the city of Montgomery at the request of

the defendant; and thereupon plaintiff avers that" said ordi-
nance of June 2d, 1873, was adopted, which was set out in full;
"that under, pursuant to, and in accordance with the terms
and conditions of said contract," water-works were erected by
the company, fire-plugs erected and located, and water supplied
through them; that ninety of the one hundred plugs, being
thoroughly tested, were found to be sufficiently supplied with
water, while the remaining ten were pronounced insufficient;
"that thereupon, to-wit, on the 1st January, 1873, the defendant
paid to said company, in monthly installments, $75 *per annum*
for each of said plugs sufficiently supplied, and paid nothing
for the others, and said payments were accepted and acquiesced
in by the company.   And plaintiff avers that it was then and
thereby agreed, by and between said company and said
defendant, that the true interpretation and meaning of said
contract was, that said defendant should pay to said company,
for each fire-plug accepted by defendant as sufficiently supplied
with water, the sum of $75 *per annum* in monthly installments;
and plaintiff avers that, pursuant to this understanding and
agreement, defendant continued to pay said sum to said com-
pany until, to-wit, June 1st, 1879," when plaintiff succeeded
by assignment and purchase to all the rights of said company
under said contract; that plaintiff afterwards extended the
water-works, and supplied seven additional fire-plugs with
water, which were accepted by the defendant as sufficiently
supplied; that for each of the fire-plugs so supplied and
accepted, ninety-seven in all, defendant paid, and continued to
pay until May, 1884, at the rate of $75 *per annum* in monthly
installments; and plaintiff avers that defendant thereby became
and was liable, and undertook and promised to pay plaintiff,
$6.25 monthly until the end of said original contract, to-wit,
until January 1st, 1895, for each of said fire-plugs so accepted
as aforesaid.   And plaintiff avers that during said month of
May, 1884, and ever since, plaintiff has continued to supply
each of said fire-plugs with water in all respects as prior to that
time; and the supply of water so furnished has been accepted
and used by said defendant, and by the fire department of said
city, during and since said month of May, 1884.   Yet said
defendant has wholly failed and refused to pay," &c.   The
complaint further alleged that, "under and pursuant to said
original contract," plaintiff furnished, "to-wit, from the — day
of ——, 1883, up to the present time," a large quantity of water
for flushing and cleansing sewers, and for laying brick pave-
ments, sewers and cement work, which was worth, to-wit,
$5,000; "and defendant thereby became liable, and undertook
and promised to pay plaintiff for the same," but has failed to
do so, &c.

The defendant demurred to the complaint, on the ground that it had no power under its charter to make such a contract as that evidenced by the ordinance, as set out in the complaint. The court overruled the demurrer, and the defendant then filed three pleas. The first plea set up a former recovery as to so much of the plaintiff's demand as related to water furnished during the months of May, June, July and August, 1884; as to that part which related to water supplied during the months of October, November and December, 1884, and January, 1885, the pendency of a former action commenced in the City Court; and as to the rest of the demand acknowledged an indebtedness " for the reasonable value of the water supplied and used, under the direction of this defendant, for flushing and washing out sewers and drains, and for the reasonable value of the water supplied through the fire-plugs for protection against fire, since January, 1885;" but denied its liability under the contract shown by the ordinance, because it had no power under its charter to make such contract. The third plea alleged that the defendant had no power under its charter to make the contract shown by the ordinance; that the original company was not bound by the terms of the ordinance; that if it had become bound, the contract was not capable of assignment, and plaintiff acquired no rights under it, and was not bound by its stipulations; and that the original company was dissolved as a corporation, and unable to respond in damages for any breach. The court sustained a demurrer to each of these pleas, and the cause was tried on issue joined on the plea of *non assumpsit.*

The overruling of the demurrer to the complaint, and the sustaining of the demurrers to the two special pleas, are now assigned as error.

GUNTER & BLAKEY, for the appellant.—(1.) The declaration is a special count on the contract of June 2d, 1873, showing an agreement to pay certain rates for water, and complaining that certain water was used and not paid for. If the contract is void, for the reasons set forth in the fourth plea, then no recovery can be had under the complaint. The question of its validity or invalidity depends upon the construction to be placed on the clause in the city charter which provides that the city council "shall not contract any debt, or incur any liability in the future, for or on account of the city of Montgomery, except such as shall be paid out of the ordinary current revenue of the city collected in the year the debt or liability is contracted."—Sess. Acts 1869–70, p. 338, § 9. The language of the prohibition is plain and unambiguous. It is aimed against every contract by which an obligation to pay may be

[City Council of Montgomery v. Montgomery Water-Works.]

created, for an amount greater than can be defrayed out of the current revenue; or by which the power of each successive council can be curtailed or hampered in the exercise of its discretion in disposing of the current revenue to defray the current expenses. If the revenues of the city can be anticipated and tied up for ten or twenty-five years, they may be for one hundred years. The revenues of the city, each year, are to be determined by the value of the assessed property, which is fluctuating, and are dependent on the rate of taxation, which is subject to legislative control. The contract, if valid, creates the liability to pay in the future, and is within the terms of the prohibition.—*Davenport v. Davenport*, 13 Iowa, 229; *Springfield v. Edwards*, 84 Illinois, 626; *Sackett v. New Albany*, 88 Ind. 473; 45 Amer. Rep. 467; *Law v. People*, 87 Ill. 386; *Prince v. Quincy*, 105 Illinois, 138, 215; *Grant v. Davenport*, 36 Iowa, 396; *French v. Burlington*, 42 Iowa, 614; Dill. Mun. Corp. §§ 130–35. (2.) The fifth and sixth pleas aver a failure of consideration for the promises sued on, and raise the simple question, whether a party can recover, in an action on a contract, the entire price agreed to be paid, when he has failed in performance. In providing water for fire protection, defendant is strictly a trustee, and invested with authority to contract for the people. The losses occasioned to citizens by reason of non-performance, are as much evidence of a partial or total failure of consideration, as if the defendant had contracted for itself, and the losses had been of its own property. (3.) The contract, or ordinance, provided a fixed price for the water furnished through fire-plugs, but did not specify the purposes for which the water so furnished should be used, thus leaving the uses to be determined by custom, or ordinary usage. The terms of the contracts under which the water was so furnished, or the ownership of the water-works, had no bearing on the question as to the customary or ordinary uses to which the water was applied; and the court properly so held, in its ruling on the demurrer to the 8th plea, whilst afterwards excluding the evidence offered in support of it. If the plea was defective, the demurrer to it ought to have been sustained; but, having been held sufficient, evidence supporting it can not be excluded.—*Mudge v. Treat*, 57 Ala. 1.

Troy, Tompkins & London, *contra.*—(1.) The prohibitory or restrictive clause contained in the charter of the city of Montgomery was intended, not to prohibit the making of a contract to continue for a longer period than one year, but to provide against the debts incurred under such contracts, whether made for one year or more, exceeding in amount the revenue of any year in which they are to be paid; and this

16

clause becomes a part of every contract entered into after its passage. Gas, water, or other protection against fire, and other things necessary and essential to the preservation of health, safety and good order, could not be obtained in many cities and towns, if the municipal authority was limited to contracts for one year only. The plaintiff's construction of the contract is supported by authority.—1 Dill. Mun. Corp. § 131 ; *East St. Louis v. Gas-Light Co.*, 98 Illinois, 415 ; *Weston v. Syracuse*, 17 N. Y. 110 ; *Valparaiso v. Gardner*, 97 Indiana, 1, or 7 Amer. & Eng. Corp. Cases, 626. If the construction were doubtful, the argument *ab inconvenienti* might be invoked. *Kimbrough v. State*, 62 Ala. 348 ; *Livingston v. Pippin*, 31 Ala. 542 ; 1 Dill. Mun. Corp. § 97. (2.) But the action is not upon the contract, which is set out merely by way of inducement. The defendant certainly had authority to contract for a supply of water for one year, and for each year in succession ; and having received and used the water, it can not refuse to pay for it.—*City Council v. Water-Works Co.*, 77 Ala. 248 ; *Singer Man. Co. v. Sayre*, 75 Ala. 270 ; *Bridge Co. v. Frankfort*, 18 B. Monroe, 41 ; *Gas Co. v. San Francisco*, 9 Cal. 453 ; *Livingston v. Pippin*, 31 Ala. 542 ; 1 Dill. Mun. Corp. § 383. (3.) The defendant could not have been made liable for any loss to the property of its citizens, by reason of the insufficiency of the water furnished by the plaintiff ; and there is no principle which authorizes a recoupment of the damages by it on account of such losses.—*Black v. Columbia*, 45 Amer. Rep. 785 ; *Tainter v. Worcester*, 25 *Ib.* 90 ; *Robinson v. Evansville*, 44 *Ib.* 770. (4.) The city was bound to pay a fixed price for the use of the fire-plugs, and another price for all the other water used. If water through the fire-plugs could be used for any and all purposes, then the other stipulation is meaningless and useless. The meaning and uses of fire-plugs are to be determined by reference to the most approved dictionaries, and not by any particular contracts, the terms of which are not shown. The evidence offered was properly excluded, because it did not come up to the requirements of a general custom, and the terms of the particular contracts were not shown.—2 Parsons' Contracts, 542-4, notes ; *Insurance Co. v. Wright*, 1 Wallace, 456 ; *Haywood v. Middleton*, 15 Amer. Dec. 615 ; *Leach v. Perkins*, 35 Amer. Dec. 268.

SOMERVILLE, J.—These two causes were argued and submitted together, and we find it more convenient to consider them in connection, as both of them, to some extent, are dependent on the same principles.

The suits were instituted by the Montgomery Water-Works against the City Council of Montgomery for water supplied

the city for the extinguishment of fires, and also for water used for sanitary purposes in flushing and cleansing the public sewers in the city; and a judgment was rendered in the court below for the plaintiff in each case.

It is contended for appellant, that these actions are based strictly upon a certain contract made between the parties litigant in the year 1871, the contents of which are set out in the complaint, and the provisions of which purport to be mutually obligatory for a period of about twenty-four years, or until the year 1895.  And the argument is urged, with great force, that this contract, for so great a length of time, is *ultra vires* and void, for two reasons, either of which, it is said, will preclude the plaintiff's right of recovery.  The first contention is, that the city authorities were forbidden, by the express terms of their charter, from entering into such a contract for a longer period than one year, such alleged prohibition being found in section 9 of the amended charter of the city, approved March 3, 1870, which was in force at the time the contract in question was made, and which provides, that "the city council shall not contract any debt, or incur any liability in the future, for or on account of the city of Montgomery, except such as shall be paid out of the ordinary current revenue of the city *collected in the year the debt or liability is contracted.*"—Session Acts 1869-70, p. 338, section 9, p. 361.  The second objection urged is, that one municipal council, or board of aldermen, can not lawfully tie the hands of its successors for so great a length of time, because it is an attempt by contract to surrender its legislative authority in abridgement of the corporate power belonging to such successors equally with the particular body thus undertaking to barter it away for an agreed price.

These are grave questions worthy of serious consideration.  But a careful investigation satisfies us that they do not necessarily arise in the decision of the cases made by the records.

The suits are not, properly speaking, brought upon the contract, or for the purpose of enforcing it as an executory agreement.  The contract, it is true, is set forth in the complaint; but this may be considered as done only by way of inducement, in view of the other averments, which show an actual consumption, from month to month, and year to year, by the defendant, of water supplied by the plaintiff for the extinguishment of fires, and of water used, from time to time, for sanitary purposes.  The suits, in other words, are upon the contract, only so far as it has been executed by the plaintiff, and no right is based upon it so far as it is executory.

It is not denied that the city council had the power to contract for a supply of water for a single year, to be used for the purposes designated, or that the price agreed to be paid for

it could not be paid out of the ordinary current revenue of the city for the particular fiscal year during which the liability for it was contracted, as required by the charter. The existence of this power is clear, and can not well be disputed.—*Intendent v. Pippin*, 31 Ala. 542; Acts Ala. 1878-79, p. 374. So, the power to make such a contract for one year being shown to exist, it could be exercised with equal propriety any other year, or successively from year to year, without in any manner infringing upon either of the principles to which we have above adverted as being contended for by the appellant's counsel. There would be no violation of section 9 of the city charter, conceding to it the construction contended for; nor would there be any tieing of the hands of any city council by its corporate predecessor. If we admit that the contract is *ultra vires*, so far as concerns the executory part of it, it may nevertheless be good so far as it has been executed on the part of the plaintiff, and the defendant has, without objection, enjoyed its benefits. In legal effect, the result is precisely the same as if the contract had been renewed from month to month, and year to year, the plaintiff furnishing water to the defendant at the latter's mere pleasure.

The defendant having the power to contract from year to year for a supply of water, and having obtained the benefit of such supplies, and appropriated them to its use from time to time, it is both reasonable and just that the services and property thus enjoyed should be paid for, and the plaintiff's right to recover is not interdicted by any sound rule of law, which is known to us.

The case of *City of East St. Louis v. East St. Louis Gas-Light and Coke Co.*, 98 Ill. 415, cited by appellee's counsel, is a well-considered authority which supports the foregoing view in every essential particular. See, also, Field on Corp. § 273; *Hitchcock v. Galveston*, 96 U. S. 341; *City Council of Montgomery v. Montgomery Water-Works Co.*, 77 Ala. 248.

We are aware of no principle which would justify the sustaining of the defendant's pleas of recoupment and set-off. These pleas set up the fact that a large amount of property, owned by private persons, resident within the city limits, had been destroyed by fire by reason of the insufficiency of the water supply agreed to be furnished by the plaintiff, and offer to set off and recoup the damages thereby sustained by these persons. It seems to be settled, according to the better view, that the power conferred upon municipalities to organize fire companies, and supply other means for the protection of property against destruction by fire, is a power in its nature legislative and governmental, involving the exercise of judgment and discretion in its proper execution. In this particular it differs

[City Council of Montgomery v. Montgomery Water-Works.]

from the ordinary case of a corporation charged by statute with the performance of a mere ministerial duty. For the erroneous exercise of such governmental power municipal corporations are not liable, nor are they responsible to individuals for the neglect or non-feasance of their agents in the discharge of their official duties touching such matters. — *Wheeler v. City of Cincinnati*, 19 Ohio St. 19 ; s. c., 2 Amer. Rep. 368 ; *Black v. City of Columbia*, 19 S. C. 412 ; s. c., 45 Amer. Rep. 785. In view of this non-liability, there is, even in an equitable point of view, an utter absence of relevancy in the fact that damages have accrued to a third person, between whom and the defendant there is no privity of legal relationship or liability. The plaintiff, moreover, does not owe the defendant for such damages. If it owes any one, it is the individuals whose property has been destroyed. This want of mutuality is fatal to the allowance of the claim.

The evidence sought to be introduced by the defendant, as to an existing custom in other cities of the United States, having water-works, to use water drawn through fire-plugs for sanitary purposes, flushing sewers, and the like, was properly excluded from the jury. The terms of the contracts, under which this so-called custom was alleged to exist, were not proposed to be shown, nor was there any evidence offered as to whether any compensation was paid for this extra use of water.

This evidence falls short of any effort to prove that, when the city purchased the use of "fire-plugs," there was included in this right, thus bargained for, the privilege of using, free of additional charge, water for sanitary purposes. The record does not, according to our view of the matter, raise the question as to whether or not the compound word "fire-plug" may not have a flexible signification, which would be broad enough, under peculiar circumstances, to permit the meaning contended for by appellant's counsel to be attached to it by established usage.

Nor is the question raised by the pleadings, in proper shape, whether the defendant was entitled to recoup for the alleged defective quality of the water furnished.

We discover no error in the rulings of the court, in either case, on the pleadings or the evidence; and the judgments must each be affirmed.

CLOPTON, J., not sitting.