# THE WASHINGTON COUNTY WATER COMPANY vs. THE MAYOR AND CITY COUNCIL OF HAGERSTOWN.

*Injunctions: exhibits to be filed. Parties: municipal corporation; to enforce on behalf of citizens contract with water company.*

A municipal corporation that has by ordinance or contract authorized a water company to supply the citizens with water at a schedule of rates and under specified conditions, is a proper party to bring a suit for an injunction against the company to enforce the contract and prevent its violation.

p. 509

Courts of equity never interfere by way of injunction unless the plaintiff has made out a clear case, and if he has in his possession papers and instruments in writing on which his equities rest, such papers or instruments must be filed in support of the bill.

p. 509

An injunction brought by the Mayor and City Council of Hagerstown against the Washington County Water Company, to enforce the contract made between the city and the water company in behalf of the citizens, respecting the character of the service and charges, and to prevent violations thereof, was held to be demurrable on the ground that an important schedule or agreement concerning the prices,

referred to in the bill, and upon which the rights of the parties rested, was not filed as an exhibit.                    p. 510

It was not necessary, however, that the charter of the company should be filed as an exhibit, since that was a matter of public record.                    p. 510

Any provisions in the charter that permitted the acts complained of were a matter of defence to be availed of by the defendant corporation.                    p. 511

Whether or not the contracts of the company permitted it to furnish water to railroad engines could not be determined without looking to the contract.                    p. 511

*Decided November 24th, 1911.*

Appeal from the Circuit Court for Washington County, sitting in equity (HENDERSON, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Chas. D. Wagaman* and *Edgar H. Gans* (with whom was *Sam'l. B. Loose* on the brief), for the appellant.

*Abraham C. Strite,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Washington County, sitting as a Court of Equity, overruling the demurrer to an amended bill of complaint filed by the appellee, The Mayor and Council of Hagerstown, hereinafter called "The City," against the appellant, The Washington County Water Company, hereinafter called "The Water Company," asking for an injunction upon the allegations therein contained and for the purposes therein mentioned.

The facts alleged in the bill and as disclosed by the contracts or agreements made by the parties hereto and filed as

a part of the bill, are substantially as follows: That on the 31st day of May, 1881, pursuant to an Act of the General Assembly of Maryland passed at its January Session, 1880, Chapter 457, an ordinance, entitled "An ordinance authorizing the Mayor and Council of Hagerstown to make a contract with a joint stock water company," was passed by the Mayor and Council of Hagerstown, and that by virtue of this ordinance a contract or agreement was entered into on the 31st day of May, 1881, by and between the City and the Water Company by which the Water Company was to supply the city with water. For the purpose of discharging its obligations created by the contract or agreement aforesaid, the water company, about the year 1880 or 1881, installed a reservoir near Cavetown, Washington County, Md., and by gravity pressure the water of a stream in South Mountain was conducted by use of pipes into this reservoir, and from the reservoir, through pipes in and along the streets of Hagerstown, the water was distributed to the inhabitants thereof for domestic and other purposes. It was found, however, that the amount of water from this source was inadequate to supply the needs of the people of Hagerstown, as provided for in the contract or agreement, and recourse was had by the water company to certain springs near the city and to Antietam Creek. The water obtained from these springs and creek was found to be unwholesome and unfit for use, and the company finding that it could not supply the city with water, in compliance with the terms of its original agreement from the source or stream therein mentioned, it proposed to the city that an additional supply of water be obtained from certain other streams, known as the Raven Rock stream and Warner Gulch stream, claiming that with this additional supply of water an adequate amount would be obtained for the city uses, unless improvidently used and wasted. Thereupon, on the 29th day of May, 1896, the city passed another ordinance, entitled "An ordinance authorizing and requiring the Mayor and Council of Hagerstown to enter into a supplementary agreement with the Washing-

ton County Water Company," and pursuant to the terms of said last named ordinance another agreement was made and entered into on the 14th day of August, 1896, by and between the parties to the original agreement. This agreement contained the following provisions:

"(1) The said Mayor and Council doth promise, covenant and agree, in consideration of the matter and things to be done and performed by the Washington County Water Company as herein stated, that from and after the period of *twelve months* from the time the said Raven Rock and Warner Gulch streams shall have been fully and entirely connected with the present water supply in the South Mountain, operated by the said Washington County Water Company as aforesaid, and incorporated therewith and made a part thereof, if the supply of water from the sources aforesaid at any time after the said period of twelve months shall be inadequate to supply the needs of the people of Hagerstown for fire and all other purposes, then the said Washington County Water Company may, in its discretion, introduce and use meters for the purpose of measuring the consumption of water by all persons using water supplied by said company for purposes other than purely domestic purposes, and charge therefor at a rate not exceeding thirty cents per one thousand gallons, etc."

(2) The said Mayor and Council further covenanted and agreed therein that from and after a period of *twenty-four months* from the time the aforesaid connections had been fully and entirely made, if the supply from said combined sources, at any time after the said period of twenty-four months, be inadequate to supply the needs of the people of Hagerstown for fire and all other purposes, "and the said inadequacy be not due to negligence or the imperfections of the mains and pipes of said Water Company, then the said Washington County Water Company may, in its discretion, introduce and use meters for the purposes of measuring the consumption of water by all persons using water supplied by the Washington County Water Company for any purpose

whatsoever, and charge therefor at a rate not exceeding thirty cents per one thousand gallons of water, or, in its discretion, charge a schedule of rates not exceeding the schedule accord-. ing to rental value now in force."

The right to use the meters, however, under the above provisions, was upon the condition that "The said Water Company at the time of said inadequacy of said supply shall have under their control and be actually furnishing a supply of water sufficient to yield daily seventy-five gallons of water for each water taker or permit holder of the Town of Hagerstown."

That until April 1st, 1910, water was supplied to the inhabitants of Hagerstown at the rate above given, at which time the water company, claiming its right to do so under the terms of the contracts aforesaid, installed meters for measuring the water consumed by the inhabitants of the city, and the use of which, as the bill alleges, they propose to continue, and by the use of them determine the amount that should be exacted of and paid by the consumer of water in the city.

In reference to the provisions of the contract above quoted, the bill alleges that the additional streams named in said contract were to be fully and entirely connected with the existing supply from South Mountain, but it charges that at no time have said streams been so connected with the then existing supply, and that the city has never had the enjoyment of the full and entire supply of the Raven Rock and Warner Gulch streams mentioned in said contract, neither separately nor together, with the stream in South Mountain previously in use. And charges that the defendant company has diverted vast quantities of water stored and collected by it from the sources provided for by its contract, and which under the aforesaid contracts the people and inhabitants of Hagerstown are entitled to receive, by furnishing large quantities of water to persons and corporations outside of the corporate limits of Hagerstown, to the injury and damage of

the inhabitants of said city and in violation of said con-
tracts.

. It further charges that the defendant company diverted
vast quantities of said water, which the citizens of Hagers-
town were entitled to receive as aforesaid, by supplying
locomotives and engines of steam railroads entering and
passing through Hagerstown; charging that by reason of the
diversion of the water as above mentioned, the supply of
water to the people of Hagerstown for domestic and other
purposes, to which they were entitled under the agreement,
has been greatly lessened and diminished, and for many
months in the year the supply of water has been thereby ren-
dered inadequate for the purposes in said agreement pro-
vided.

It·is further alleged in the bill that the defendant com-
pany has been grossly negligent in the operation of its·works;
that it has built and constructed reservoirs which are faulty,
defective, leaky and unfit and unadapted for the uses for
which they are intended, and permitted other parts of their
plant to be and remain in bad repair, on account of which
there is a great waste and loss in the supply of water to the
citizens of Hagerstown for domestic and other purposes.

The bill also charges that meters have been installed in
violation of the contracts, and the company has declared its
intention to charge, and is now charging or attempting to
charge, the water takers and permit holders of the city at
the rate of thirty cents per one thousand gallons of water
consumed by them.

The bill further alleges that the defendant contends that in
its discretion it may charge a schedule of rates not exceeding
the flat rate schedule named in the contracts, or a meter rate ·
not to exceed thirty cents per one thousand gallons, in the
event the said defendant was entitled, under its contracts, to
the right to install meters and charge meter rates. "This
"combination rate," as the bill alleges, is not permitted by a
proper construction of the contract, but that the rate charged

must be wholly and exclusively a meter rate or wholly and exclusively the flat rate.

The bill also alleges that the company has notified the consumers of water that if the charges therefor thus ascertained are not paid within fifteen days after the first day of the calendar month upon which the said bill is rendered, that it will, upon five days' notice, cut off the consumer's supply of water altogether, and that it so intends to cut off the supply in conformity with said notice. This, the bill alleges, the defendant is not authorized by its contract to do, and this attempt or procedure to cut off the supply of water to enforce the wrongful demands of the defendant is an attempt to collect a debt by duress and is void.

Upon these allegations in the bill the Court is asked: (1) That the defendant company, its officers, agents, servants and employees be enjoined, prohibited and restrained from installing water meters upon the inhabitants of Hagerstown for the purpose of measuring the consumption of water for domestic purposes, and using and maintaining meters heretofore installed for such purposes. (2) From collecting from the inhabitants of Hagerstown any sum or sums based upon the water consumed and measured by meters. (3) From establishing and adopting the flat rates heretofore in use as a minimum rate to be charged for water consumed and measured by meters. (4) From charging the inhabitants aforesaid an amount in excess of what would be the value of water consumed by meter measurements at thirty cents per one thousand gallons. (5) From charging the said inhabitants, for water consumed, an amount which comprises both the flat rate and the meter rate, if the quantity of water consumed is measured by meter measurements. (6) From cutting off the water from the consumers thereof in the city, or in any way interfering with them in the use and enjoyment thereof pending the adjustment and settlement of this controversy. (7) From supplying persons or corporations outside of the limits of Hagerstown with water derived from the sources which under the aforesaid contracts are to supply water to

the inhabitants of said city.   (8) From supplying the engines and locomotives on steam railroads passing through Hagerstown with water from those sources which, under the contracts aforesaid, the inhabitants of Hagerstown are to receive and enjoy.

To this bill the defendant company demurred.   The objections urged against the bill are : (1) That the Mayor and Council of Hagerstown is not a proper party as sole plaintiff. (2) That the water company's charter and schedule B, which is referred to as being attached to the original agreement, when executed, between the parties hereto and which contains the water rents and water charges as established by said contract and agreement, are not filed with the bill.   (3) Because it does not state such a case as entitles the plaintiff to any relief in equity against the defendant.   The demurrer was overruled.

In support of the first objection we are referred to by the counsel for the appellant to the case of *Simons Sons Co.* v. *Md. Telephone Co.,* 99 Md. 142 ; *Adams* v. *Union Railroad Co.,* 21 R. I. 134 ; *Paducah Lumber Co.* v. *Paducah Water Supply Co.,* (Ky.), 7 L. R. A. 77, and others.

The first of these cases, *Simons Sons Co.* v. *Md. Telephone Co.,* was a suit instituted by the appellant against the appellee corporation for an injunction upon the allegations therein contained.   In that case the telephone rate or charges were fixed and established by an ordinance of the city, and by it the company was prohibited from charging in excess of those rates.   This, however, they attempted to do, and the plaintiff, four in number, all citizens of Baltimore and all of whom had contracts with the company for telephone service at the rates named in the ordinance, were notified by the company that for the telephone services which they were receiving a higher charge than that established in the ordinance would be imposed upon them, and they were threatened with a discontinuance of the service and a removal of the telephone instruments from their places of business unless they agreed to pay for such service at such higher rate.   The

prayer of the bill filed for an injunction was, that the appellee be restrained from the aforesaid threatened action and from demanding and receiving from the appellants the excess of charge for telephone services, such as was mentioned in the bill, over the rate provided in the ordinance, and that they and others in a like situation with them be decreed to be entitled to receive and demand from the appellee the kind of service mentioned in the bill at the rate of charge provided in said ordinance.  The Court there held that the ordinance, passed in pursuance of the power conferred by law upon the Mayor and City Council of Baltimore, imposed upon the appellee a duty to the general public, which the members thereof have a right to enforce against it in conditions which show that it is violating such duty, but in so holding they did not decide that it was not also within the power of the city, by a bill for injunction, to enforce the appellee therein to comply with the provisions of the contract, so made by it with the city for and on behalf of its citizens, nor were they called upon there to decide this question.  It there decided that the right existed in the plaintiffs to institute suit and to obtain the relief sought, without determining the right of the city to institute like proceedings to enforce a performance of the provisions of the contract by restraining the appellee from doing those things which were inconsistent and in conflict with it.

In the case of *Adams* v. *Union Railroad Company,* the plaintiff, a passenger upon the defendant's road, was assaulted by the defendant's servant and it was for this assault that a suit at law was instituted.  In that case the defendant company, by a contract with the town of East Providence, made pursuant to an ordinance passed giving to the town the authority to make such contract, agreed that "during the continuance of said exclusive franchise the fare from one point to any other point on the line of said party of the second part in said town shall not exceed five cents."  The plaintiff, a passenger in the car of the defendant company, refused to pay what he claimed was an excessive charge or fare

under the contract aforesaid, whereupon he was ejected by the conductor from the car. The Court there said: "The contract in question was made for the benefit of passengers using the defendant's cars. The town can hardly show damages for its breach, and therefore if the people for whose benefit it was made can not recover for its breach, no one can. True, the town might take steps to avoid the contract and stop the road for failure to perform the conditions, but in so doing it would cut off the privilege of many to redress the wrong of one. It must have been intended to be a contract for the benefit of the public made through the town as their corporate representative, upon which passengers could rely for breach of which they would seek redress. Otherwise it is a contract of little obligation and force.

In the case of the *Paducah Lumber Co.* v. *Paducah Water Supply Company, supra,* the plaintiff instituted an action at law to recover for damages suffered by him in the destruction of his property by fire resulting, as the plaintiff claimed, from the failure of the defendant company to comply with the terms of a contract entered into by and between the defendant company and the City of Paducah, by which the defendant company was, among other things, to erect a standpipe of certain height and diameter, with which were to be connected the conducting pipes and hydrants, also pumping engines having capacity to force into the standpipe the amount of water therein named every twenty-four hours, and to have in the standpipe and connecting pipes at all times a supply of water sufficient to afford a head or pressure requisite for all domestic, manufacturing and *fire protection* purposes for all the inhabitants and property of the people of the city, etc. There was a demurrer to the petition and one of the questions involved thereby was, "Whether there is vested in the plaintiff (appellant) such legal interest in the contract between the City of Paducah and the defendant (appellee) as to authorize it in any event to prosecute an action in its own name and for its own benefit?" In

passing upon this question the Court said: "If the City of
Paducah had the power to make the contract as well for the
personal benefit of its several inhabitants as for purely
municipal purposes, and did so make it, the appellant, being
the real party in interest because the owner of the property
destroyed, has the right to prosecute the action in his own
name, if maintainable at all."

In the last two cited cases it will be observed that in each
case the plaintiff sued to recover a loss suffered by him and
for which the municipality, of course, could not have sued,
for the losses were not the losses of the municipality, but of
the individual suffering the injury. A suit such as here
instituted could not have redressed the wrong complained of.
The breach of the contract in these cases, on the part of the
defendant, resulted in loss and damage to the plaintiff which
only could have been recovered by a suit instituted by the
plaintiff and no one else.

The proceedings in this case are not instituted to recover
a loss or injury suffered by an individual, but are brought by
the plaintiff, the Mayor and Council of Hagerstown, repre-
senting the consumers of water, the citizens of Hagerstown,
to prevent a possible loss to them by a non-compliance on the
part of the defendant company with the contract made by it
with the plaintiff. In executing the contract the plaintiff,
the Mayor and Council of Hagerstown, acted as the corporate
representative of the citizens and consumers of water in said
city, and it is in that representative capacity that the city is
now acting in this proceeding to enforce the performance of
the contract.

In the case of the *Mayor, etc., of the town of Boonton* v.
*Boonton Water Company* (N. J. 61 Atl. Rep. 390), the com-
pany had by contract or agreement entered into by it with
the Mayor, etc., of the town of Boonton, agreed to supply
water to said town for municipal and domestic purposes.
This agreement, it is alleged, was violated by the company
by the diversion of water by it from the use for which it was

intended by the said contract or agreement, thereby rendering the amount inadequate for such municipal and domestic uses. Because of the violation of the terms of the contract, the plaintiff, the Mayor, etc., of Boonton filed its bill. The Court, in speaking of it, said: "The bill is, in effect, a bill for the specific performance of the contract. It was and is what is called and known as a continuing contract in which the water company agreed for a term of years to perform a certain duty and the city agreed to pay a certain compensation therefor. It is not the sort of a contract which can be decreed to be specifically performed in the sense in which that word is generally usd, but it is quite clear, I think, and it has not been disputed by counsel, that the Court may exercise a jurisdiction by way of applying and enforcing a preventive remedy to deter the defendant from either openly breaking it or from disabling itself from performing it."

In the case just cited not only was the question of inadequacy of water for domestic uses involved, but the insufficiency of water for municipal purposes as well, and for this reason the distinguished counsel for the appellant in this case contend that the above cited case is not applicable to this case. But the Court in its discussion of that case, as we think, passed upon the rights and duties of the Mayor, etc., in relation to the enforcement of the contract in respect to the rights thereunder of the individual citizens or consumers of water, when it says: "The bill is not intended, of course, to remedy any actual damage that has occurred to the city or any of its inhabitants by reason of the alleged breach of contract, but it is a bill to prevent possible or probable future injury. The complainant, as a party to this contract, occupies the position of a trustee for the inhabitants at large of the Town of Boonton, and it is its plain duty to protect the rights of the inhabitants of Boonton— the public, the community—in so far as they have rights under that contract."

As was said by the learned Judge below in his opinion, "The party with whom the contract was made ought to have

the right to enjoin the violation of such a contract as this; otherwise, the municipality charged with the duty of providing for a water system and safeguarding the citizens' rights in so doing would, after having performed all its duties and obligations satisfactorily, be powerless to enforce the performance of the contract, unless it could show some damage to itself as a corporate entity." We think the party has this right and that the Mayor and Council of Hagerstown is a proper party to enforce the performance of this contract by an injunction as here attempted.

As to the second objection, viz: that the necessary exhibits are not filed in support of the bill, this Court in the case of *Gottschalk* v. *Stein & Leopold,* 69 Md. 58, said: "Courts of equity never interfere by way of injunction unless the plaintiff has made out a clear case, and if he has in his possession papers or instruments of writing on which his *equities rest,* such papers or instruments must be filed in support of his bill."

The primary agreement or contract in this case contains this provision: "And it is further agreed by and between the parties hereto, that the water rents, water rates and water charges and salaries of officers mentioned in the paper hereto attached, marked schedule B, shall be the rates, charges, salaries as approved by the said Mayor and Council, and the same shall not be changed by the said water company without the consent and approval of the said Mayor and Council." This Schedule B, although referred to as being attached to the contract, is not filed as an exhibit with the bill. It is true that reference is made thereto both in the supplementary ordinance and in the supplementary agreement. In both it is stated that in the event of the installation of meters the company "shall have full power and authority, in their discretion, to introduce meters for the purpose of measuring the consumption of water by all persons using water supplied by the said Washington County Water Company for any purpose whatsoever, and charge therefor at a rate not exceeding thirty cents per one thousand gallons, or, in its

discretion, by a schedule of rates not exceeding the schedule according to the rental values now in force, which is as follows:

| *Dwelling Houses.* | *Per Annum.* |
|---|---|
| First-class rental value $200 and upwards | $10.00 |
| Second-class rental value $150 to $199 | 8.00 |
| Third-class rental value $100 to $149 | 6.00 |
| Fourth-class rental value under $100 | 4.00." |

This schedule, as disclosed by the supplementary ordinance and agreement, deals only with flat rates for dwelling houses, and it is a reasonable inference that it does not contain all that will be found in Schedule B. The contract does not alone provide for the supply of water for dwelling houses, but for all other needs ordinarily found existing in a town or city the size of Hagerstown.

The question of rates and charges is, at least, one of the important features of this controversy, and as Schedule B, independent of the references thereto made in the supplementary ordinance and agreement, is the only source from which the information as to such rates and charges can be obtained, we think it proper that it should be filed as an exhibit.

It is also contended that a copy of the water company's charter should have been filed as an exhibit. As to the necessity of this we think there is a difference between the charter and Schedule B. Schedule B was a part of the contract, and the contract, in the possession of the plaintiff, forms the basis of the bill. The charter is a matter of record and accessible alike to both the plaintiff and defendant. By virtue of it the company came into existence and by it was authorized to conduct and operate the business as therein provided. If, by the charter, it is shown that the company was permitted and authorized to do any of the things that are attempted to be prohibited by this bill, notwithstanding the provisions of the contract entered into by it with the city, this would seem to a be a matter of defence to be availed of by the defendant.

There are other objections urged against the bill, including the prayer asking that the defendant be enjoined from supplying the engines and locomotives on steam railroads passing through Hagerstown with water from those sources which, under the contracts, as it is alleged therein, the inhabitants of Hagerstown are to receive and enjoy.

The contracts referred to contain no express provisions prohibiting the defendant from supplying to engines and locomotives water stored by it from the sources mentioned in the contract, and if prohibited at all, such prohibition must be found in the existence of the facts contended for by the plaintiff that such use of the water is not within the enumerated uses mentioned in the contract, and that by the use of the water for such purposes the defendant is prevented from complying with the provisions of the contracts aforesaid.

In determining the correctness of this contention we must look to the contract, the whole of which is not before us. Thus we will refrain from passing upon the same. Upon the filing of schedule B, which we say should be filed with the bill, further light may and probably will be thrown upon this contention.

From what has been said we think the Court erred in overruling the demurrer. The order overruling the same will therefore be reversed.

*Order reversed and cause remanded, with*
*costs to the appellant.*