(79 South. 39)
MOBILE ELECTRIC CO. v. CITY OF MOBILE. (1 Div. 38.)

(Supreme Court of Alabama. May 9, 1918.)

1. CORPORATIONS ⬤⟲386—ULTRA VIRES ACTS—RATIFICATION.

Acts ultra vires a corporation, as distinguished from those ultra vires the agents, cannot be ratified.

⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**2. CONTRACTS ☞246—ALTERATION—EFFECT.**

An agreement when changed by mutual consent of the parties becomes a new agreement taking the place of the old and consisting of the new terms and so much of the old agreement as the parties have agreed shall remain unchanged.

**3. CONSTITUTIONAL LAW ☞121(2) — OBLIGATION OF CONTRACT—CONTRACTS TO FURNISH ELECTRICITY.**

Code 1907, § 1260, empowering a municipality to contract for furnishing electricity to the city or town, authorizes a municipality to contract for its inhabitants for a fixed and reasonable period, and such contracts are protected under the inviolable contract clauses of the state and federal Constitutions.

**4. ELECTRICITY ☞11—LIGHTING CONTRACTS —RATES—"PERPETUALLY."**

A contract under authority of Code 1907, § 1260, between municipality and an electric company to furnish light and current to the city for 10 years, and fixing maximum rates for supplying citizens "to remain in force perpetually," though void in so far as it makes rate perpetual, will be enforced during period of 30 years in analogy to Const. 1901, § 228, limiting terms of franchises to that period.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Perpetually.]

**5. SPECIFIC PERFORMANCE ☞75—CONTRACTS —CONTINUOUS ACTS.**

A bill by a municipality to enjoin an electric company from increasing its rates and from depriving the subscribers who failed to pay the increased rate of current, while in the nature of a bill for specific performance of a contract, does not call for the continuous performance thereof through a series of years, and is not therefore without equity.

**6. INJUNCTION ☞59(2) — ADEQUATE REMEDY AT LAW — ENFORCEMENT OF CONTRACTS — "PUBLIC SERVICE CORPORATION."**

A city may maintain a bill to enjoin an electric company from increasing rates as to its citizens, notwithstanding that the citizens could redress the wrong individually or collectively; the object being to prevent a possible loss or inconvenience to them by noncompliance with the contract between the city as the representative of the consumers and the company to furnish light, the company being a public service corporation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Service Corporation.]

Appeal from Circuit Court, Mobile County; Claude A. Grayson, Judge.

Bill by the City of Mobile against the Mobile Electric Company to enjoin respondent, its officers, employés, etc., first, from establishing and adopting a schedule of rates for currency supplied the city of Mobile and from charging the general customers of respondent in the city of Mobile for electric current an amount in excess of the rate specified in the contract of December 31, 1906, as amended, and from cutting off current from those who failed to pay the amount in excess of the rates specified. From a decree overruling demurrers to the bill, respondent appeals. Affirmed.

Inge & Kilborn and Harry T. Smith & Caffey, all of Mobile, for appellant. Robert H. Smith, of Mobile, for appellee.

ANDERSON, C. J. While the city of Mobile had the authority, under its charter powers, given by the Act of 1900-01, p. 2342, to contract with the respondent corporation for supplying lights for public purposes, it may be conceded that it had no authority thereunder to contract for supplying lights to the citizens and that the part of the contract as dealt with supplying lights to the citizens was ultra vires the municipality and void. The original contract however, was modified, and executed as changed or modified after the enactment of section 1260 of the Code of 1907, and the new or modified contract was authorized by said statute.

[1, 2] The doctrine is well established that acts ultra vires a corporation, as distinguished from those ultra vires the agents, cannot be ratified, but we think that the contract made in 1910 was more than a mere ratification of the old contract. It involved a change in the original contract and there was a re-execution of same as changed, and, while the change may have been slight, it was deemed of importance to the contracting parties and produced benefits or detriment to the one or the other. "An agreement, when changed by mutual consent of the parties, becomes a new agreement, which takes the place of the old and consists of the new terms and as much of the old agreement as the parties have agreed shall remain unchanged." 13 Corpus Juris, p. 595, § 615; Shriner v. Craft, 166 Ala. 146, 51 South. 884, 28 L. R. A. (N. S.) 450, 139 Am. St. Rep. 19; Elliott on Contr. vol. 3, §§ 1859 and 1987.

[3] Section 1260 of the Code of 1907, among other things, authorizes the municipality to contract for furnishing electricity to the city or town, and statutes quite similar to this one have heretofore been construed as authorizing a municipality to contract for water for its inhabitants for a fixed and reasonable period, and such contracts are protected under the inviolable contract clauses of the Constitution, state and federal. Bessemer Water Co. v. Bessemer, 152 Ala. 391, 44 South. 663; Mitchell v. Gadsden, 145 Ala. 137, 40 South. 350; Weller v. Gadsden, 141 Ala. 642, 37 South. 682, 3 Ann. Cas. 981; Freeport Water Co. v. Freeport, 180 U. S. 587, 21 Sup. Ct. 493, 45 L. Ed. 679; Los Angeles v. Los Angeles Water Co., 177 U. S. 558, 20 Sup. Ct. 736, 44 L. Ed. 886.

[4] The appellant contends that while the word "perpetualy" means forever or eternal, it also means continually, uninterrupted, etc., and that as a holding that the word "perpetually" as used in the contract meant forever would render it void, it should be so interpreted as to render the contract legal in its entirety, and that the word as used meant that the rate should be maintained continuously and uninterruptedly during the 10-year period of the contract, and not that the rate was to be maintained for all time.

The contract in question first provides for furnishing the city certain lamps and current to light the same, "for the term of 10 years, beginning on the 1st day of November, 1907, and ending with the 31st day of October, 1917"; second, to light the market house of the city of Mobile "during the term of this contract"; third, to furnish certain electric current on the 24-hour incandescent circuit on a meter basis, "during the life of this contract." It will be observed that in dealing with what is to be furnished the city for public purposes, that is, arc lamps lighting the market house and the current on the incandescent circuit, the period is specifically fixed for the 10-year term of the contract. But when dealing with maximum rates for supplying the citizens, we find no specifications limiting the period to 10 years, or during the term of the contract. This clause of the contract provides:

"In further consideration of the said payments by the said city of Mobile, the Mobile Electric Company does hereby agree to the establishment of the following maximum rates for the sale and distribution of electricity over a system of poles and wires throughout the city of Mobile to remain in force perpetually."

Therefore, in dealing with the service to be given the city for public lights the time limit is fixed as 10 years, or during the life of the contract, but in dealing with the rate for furnishing the inhabitants with electricity it is to be maintained, not for 10 years, but "perpetually." It is true that following the schedule of rates there is a clause in the contract providing for a discount in the following language:

"A discount of 2 cents per K. W. H. to be allowed on the above rates if bills are paid within 10 days after the said bills have been rendered, except that during the 10 years of this contract the rate mentioned above from 0 to 50 shall be 10 cents per K. W. H. less a discount of 3 cents per K. W. H. if paid within ten days after the rendering of the bill therefor."

This was in no sense a limitation on the time for maintaining the rate and supplying the lights, but merely a provision for a discount of 3 cents as to a certain item during the limited period of 10 years, referring, of course, to the 10-year period for service to the city, indicating that the discount should be but 2 cents thereafter as to the entire schedule. It did not limit the maintenance of the rate to 10 years, or terminate the entire contract in 10 years, but applied the 10-year period only to the exception by allowing a 3-cent discount as to a certain item. It is manifest that the words used, "except during the 10 years of this contract," were intended to except the discount rate as to a certain item from a longer term and carved out a 10-year period from this longer term. We are of the opinion that the contract negatives any intention of limiting the period of maintaining rates to the citizens to the 10-year period applicable to the service to the city, and that the parties thereto contemplat-

201 ALA.—39

ed that the rate should continue "perpetually," or so long as they could lawfully contract for the maintenance of same.

The statute (section 1260 of the Code of 1907) authorized the contract in question, and provides no limitation upon the duration of same, though it is the policy of the law to declare contracts of this character unenforceable for an indefinite time and unreasonable period, upon the theory that, while there may be no statutory inhibition, the municipalty cannot, in the exercise of its delegated contractual right, perpetually or for an unreasonable time fasten upon the taxpayers and inhabitants rates and obligations that cannot be changed or regulated during reasonable intervals so as to meet changed conditions and thereby void extortion and oppression. McQuillin on Mun. Corp., pp. 3718, 3719; Home Tel. Co. v. Los Angeles, 211 U. S. 265, 29 Sup. Ct. 50, 53 L. Ed. 176; Bessemer v. Bessemer Water Works, supra. Such contracts are not specially prohibited or made void in toto by any statute of this state, but are deemed invalid under the policy of our law to the extent to which they may transcend a reasonable and lawful period. Nor do they belong to that class which are void because contrary to public morals, etc. It is only the excess which offends against the policy of the law and which will be separated from the valid period and declared unenforceable. Robertson v. Hayes, 83 Ala. 290, 3 South. 674; Trammell v. Chambers County, 93 Ala. 388, 9 South. 815; Weller v. City of Gadsden, 141 Ala. 642, 37 South. 682, 3 Ann. Cas. 981.

In the Robertson Case, supra, the court dealt with a lease for a term beyond the period fixed by the statute, and held that the statute operated only against the excess and that the lease was valid for the term authorized, distinguishing our statute from the New York one. The Trammell Case, supra, involved a contract for the hire of convicts extending beyond the period authorized by the statute, and the court, citing the Robertson Case, held that the contract was not void in toto and if void to any extent was only so as to the excess. The Weller Case, supra, is directly in point, except that the contract there was for water instead of lights, and the opinion of Tyson, J., states, in effect, that should the contract cover a prohibited period it would be declared invalid for the excess beyond the permissible period. It is true the conclusion, rather than the opinion, was adopted by the court, but said opinion was subsequently practically approved and adopted in the case of Mitchell v. Gadsden, 145 Ala. 137, 40 South. 350.

It is therefore manifest, regardless of the views of some of the other courts, that our own court has uniformly held that such contracts are separable, and have enforced them when not prohibited or void in toto, to the extent that they are not prohibited, striking down only the excess, or the part which is

prohibited. We, of course, realize that courts cannot make contracts for parties, and that the enforcement of one materially different from the one they made would be the equivalent of making a new contract, but upholding the present contract to the extent of its legality and declining to enforce the same beyond a lawful period does not result in making a new contract, or the enforcement of obligations not incurred. It is evident that the parties intended that the rate provided should be maintained for all time and which included any lawful period of duration, and that it was expected that each party to the contract would live up to same so long as they were legally permitted to do so. We hold that this clause of the contract is still binding upon the parties thereto and requires them to live up to same for the maximum period fixed by law for the life of such contract and which seems to be 30 years. While no fixed period has been heretofore announced as to the duration of contracts like the one under consideration it has been several times intimated by this court that, as section 228 of the Constitution of 1901 limits certain franchises to 30 years, this should create, by way of analogy, a rule to be applied to contracts of this character. Bessemer Case, supra. We therefore think, and accordingly hold, that the contract, in so far as it applies to furnishing electricity to the inhabitants as distinguished from the city for public purposes, and fixing a rate for same, terminates 30 years from the execution of the new contract, modifying the old one, to wit, 1901, unless the respondent's franchise sooner expires. If the franchise expires before the 30-year period, the present contract shall terminate therewith.

We are not unmindful of the fact that the rule in this state of holding contracts, not malum in se, invalid only as to the time unauthorized is not in accord with several cases by other courts, notably the case of Westminster v. Westminster Waterworks, 98 Md. 551, 56 Atl. 990, 64 L. R. A. 630, 103 Am. St. Rep. 424. We are supported, however, by the Kansas court in the case of Columbus Waterworks v. Columbus, 48 Kan. 99, 28 Pac. 1097, 15 L. R. A. 354, and the United States Supreme Court in the case of Oregon Navigation Co. v. Winsor, 20 Wall. 64, 22 L. Ed. 315. See, also, McCullough v. Smith, 243 Fed. 823, 156 C. C. A. 335, and many cases there cited. And just what our holding would be as an original proposition matters not as the present rule was announced in the Robertson and Trammell Cases, supra, more than a quarter of a century ago and operated as notice to contracting parties that, although they made contracts for a period beyond the lawful limit, the excess would be disregarded and the contract upheld for such period as was authorized. True, the Robertson Case dealt with a lease, but the doctrine was applied in the Trammell Case to a contract of hire.

The cases of Greenville v. Greenville Water Works, 125 Ala. 625, 27 South. 764, and Montgomery v. Water Works, 79 Ala. 233, have but little bearing upon the question here the one way or the other. They in effect, proceeded upon the assumption that whether the contract was void or not it could be enforced as to the executed part of same from year to year, or, if void in toto when the water was furnished and consumed the transaction would be treated as renewed from month to month and year to year. Neither of these cases involved an enforcement of the contract for the full period or the determination of the question now under consideration.

[5] It is insisted that the bill is without equity because it invokes the specific performance of a contract involving the performance of continous reciprocal duties; that the citizens have a plain and adequate remedy at law; and that the municipality cannot maintain such a bill. There is no merit in this contention as the bill has equity upon the authority of Bienville Water Co. v. Mobile, 112 Ala. 260, 20 South. 742, 33 L. R. A. 59, 57 Am. St. Rep. 28, and the well-considered case by the Maryland court of Washington Water Co. v. Mayor of Hagerstown, 116 Md. 497, 82 Atl. 826, Ann. Cas. 1913C, 1022. While the bill is in the nature of a bill for specific performance of a contract, it does not call for the continuous performance of same by all the parties thereto running through a series of years; it seeks by the negative means of injunction the enforcement of a public duty by preventing the respondents from shutting off the lights of the citizens who comply with the terms of an existing contract placing upon the respondent the discharge of a public duty.

[6] The city has the authority to file the bill, notwithstanding the citizens could redress the wrong individually or collectively. Authorities, supra. The suit is not to recover loss or injury suffered by an individual, but is brought by the municipality, representing the inhabitants, to prevent a possible loss or inconvenience to them by a noncompliance on the part of the respondent with the contract made by it with the complainant. The contract was made by the city as the representative of the consumers, and it is in that capacity that the city is now acting to protect the inhabitants from the breach by the respondent of a public duty. It is true that the contract is a continuing one, and is the sort of contract that cannot be decreed to be specifically performed in the sense in which the word is generally used; but it is quite clear that the court may exercise jurisdiction by injunction to deter the defendant from openly breaking it by failing to perform a public duty thereby assumed. Hence this cause is unlike the Alabama cases cited and relied upon by appellant's counsel. The case of Gulf Compress Co. v. Harris, Cortner & Co., 158 Ala. 354, 48 South. 477, 24 L. R. A. (N. S.) 399,

is not in conflict with the present holding, for while holding that the compress was not a "public service" corporation in the case of a railroad serving as a public carrier (we may add that a corporation like this respondent is a "public service" corporation), the opinion in the Compress Case, supra, expressly guards the holding by stating that "equitable remedies might be sought and applied in the former when they would not be in the latter."

The trial court did not err in overruling the demurrers to the bill of complaint, and the decree is affirmed.

Affirmed.

McCLELLAN, SAYRE, and GARDNER, JJ., concur.