# Dimmick, *et al. v.* Stokes.

## *Injunction.*

(Decided Feb. 5, 1907. 43 So. Rep. 854. Rehearing denied May 14, 1907.)

1. *Specific Performance; Contract of Employment; Mutuality.*— On account of want of mutuality a contract by which one agrees that another should be employed as general manager of a corporation will not support a bill for specific performance.

2. *Equity; Corporation Officers; Reinstatement.*—In the absence of some special ground of equitable cognizance a bill to compel the re-instatement of one as general manager of the corporation and to remove another as president, cannot be sustained.

APPEAL from Montgomery Chancery Court.

Heard before Hon. W. L. PARKS.

Bill by M. C. Stokes against J. W. Dimmick and others. From a judgment in favor of plaintiff, defendants appeal. Reversed and rendered.

This is a bill exhibited by Matthew C. Stokes against Albert F. Wilson, J. W. Dimmick, and J. P. Dimmick, seeking an injunction to restrain Albert F. Wilson from acting as president of the Alabama Central Railroad, or as director, or in any way interfering with the corporation or its affairs. It also prays that the three above-named defendants be enjoined and restrained from holding a meeting of the stockholders of said corporation under the call made by said Wilson, and that they be restrained and enjoined from interfering with orator in

the discharge of his duties as general manager of the corporation under any claim that orator has been removed from office by virtue of any proceeding heretofore had or that may be hereafter had by the board of directors; that the court will declare that the election of Wilson as director and president of the corporation was illegal, and that he derived no powers therefrom; that the court will further decree that the attempted removal of orator by or under authority of said board of directors was invalid; that the corporation be reorganized and the attempted action of the board of directors in respect to the election of Wilson be rescinded. The facts made by the bill are, briefly, that orator had a contract with Smith, by which Smith agreed to sell orator certain timber for a consideration recited in the contract, giving orator 21 years in which to cut said timber, upon condition that he should build and have in operation within 2 years from the date of the contract a railroad extending from Booth, a station on the Mobile & Ohio Railroad for a distance of about five miles, to the plantation of Smith. Orator had the Alabama Central Railway incorporated with a view of constructing said road, and acquired other timber tracts adjacent to the Smith property. Orator associated Charles H. Scott and Gaston Scott with him, and they began the construction of the road; but afterwards orator bought the shares of said stock for the sum of $18,699.61, for which J. W. Dimmick advanced him the money, for which orator transferred to Dimmick 166 2-3 shares, as provided for in the agreement made an exhibit to the bill. It alleges a contract with the Mobile & Ohio Railroad, with a lease of some second-hand rails, with a right to purchase, which rails were furnished under agreement, and that Dimmick advanced from time to time funds to the construction of said railroad in the

amount of $35,000 or $40,000; also alleged a contract with the Mobile & Ohio for the lease of an engine and passenger coach at a rental of $7 per day. The bill also sets up the charter of the Alabama Central, in which it is provided that there should be three directors chosen annually by the stockholders. It avers orator's election as general manager. It also avers the election of Dimmick as president, and J. P. Dimmick as treasurer and vice-president. It alleges, also. the resignation of Dimmick and the election of Albert Wilson in his stead, but alleges that said Wilson was ineligible to the office on account of not being a stockholder and director in said company at the time of his election. The part of the agreement, relative to the general manager, and which is made the basis for a specific performance is in these words: "It is further agreed between the parties hereto that the party of the first part is to be the general manager of the said Alabama Central Railway, subject to the approval of the stockholders." This contract was signed: "M. C. Stokes, J. W. Dimmick." Motion was made to dismiss the bill for want of equity, and demurrers were interposed thereto raising the want of mutuality in the contract sought to be enforced, and motion was made to dissolve the temporary injunction, all of which motions were denied and demurrers overruled, and from these decrees, this appeal is prosecuted.

GUNTER & GUNTER and W. F. THETFORD, JR., for appellant.—The suit is one for specific performance.— *Elec. Lighting Co. v. Mobile S. H. Ry. Co.,* 109 Ala. 193; *Joy v St. Louis,* 138 U. S. 1. If the corporation itself had made the contract it could not be specifically enforced because it is for personal services of a confidential kind and for an uncertain period and not mutual and because it would be against public policy in the case of

railroads.—*Johnson v. S. & B. Ry. Co.*, 3 DeG., McN &
G. 923; *Mair v. Himalaya T. Co.*, L. R. 1 Eq. 415; *West
v. Camden*, 135 U. S. 507.   The specific performance of
the contract is against the uniform practice of the court.
—*Johnson v. S. & B. Ry. Co., supra; Pickering v. Elcy*,
2 Y. & C. 249; *Stocker v. Blockelblank*, 3 M. & G. 266;
*Frith v Riddle*, 33 Beav. 516.   The Alabama cases are
directly in point.—*Iron A. Pub. Co. v. W. U. T. Co.*, 83
Ala. 498; *Wingo v. Hardy*, 94 Ala. 190; *S. & N. A. R. R.
Co. v. H. L. A. & B. R. R Co.*, 98 Ala. 406; *Elec. Light
Co. v. M. S. H. Ry. Co.*, 109 Ala. 170; 112 Ala. 260; 121
Ala. 580.

J. M. CHILTON, for appellee.—On motion to dismiss or
dissolve all the averments of the bill are admitted to be
true and if they make a case which in any aspect, and
after treating all amendable defects as cured, would au-
thorize relief, the motion will be overruled.—*Haines v.
Short*, 88 Ala. 52; 75 Ala. 275; 82 Ala. 187; 82 Ala. 442;
95 Ala. 251; 130 Ala. 301.   The stockholders were the
only parties to the contract and are the only parties to
the bill.   Under the contract by which J. W. Dimmick
acquired his stock, it was agreed that Stokes should re-
main general manager subject to the approval of the
stockholders, and of course, Joseph Dimmick who ac-
quired his stock from J. W. Dimmick was bound by its
terms.—*Moses v. Scott*, 84 Ala. 608.   The contract is
not opposed to public policy.—15 A. & E. Ency. of Law,
934.   An agreement by the entire body of stockholders
will be enforced in equity as against the corporation,
and if the corporation should make a contract without
authority, the absence of authority may be waived by
the stockholders.—*M. & C. R. R. Co. v. Grayson*, 88 Ala.
572; 107 Ala. 572; 118 Ala. 607   While retaining the
consideration Dimmick would not be allowed to assail

the contract in any of its parts even for fraud.—*Goodman v. Winter*, 64 Ala. 610; *Tyson v. Williamson*, 105 Ala. 644. Under the facts stated in the bill it contained equity.—*Birm. Min. Co. v. Mutual Loan Co.*, 96 Ala. 364; *Bell v. Montgomery L. Co.*, 103 Ala. 275. The bill also contains equity in seeking to enjoin Wilson from acting as president or as director by virtue of his alleged election—*Moses v. Tompkins*, 82 Ala. 613; *Perry v. Tuscaloosa Cotton Co.*, 93 Ala. 364; *Elliott v. Sibley*, 101 Ala. 344.

ANDERSON, J.—The bill seeks to specifically enforce a certain contract made between complainant and J. W. Dimmick, and which provides for the employment of Stokes as the general manager of the company. Conceding that such a contract would be binding on the company, which we need not decide, that clause of same will not support a bill for specific performance. Our court, in defining the class of contracts that can be specifically enforced in equity in the case of *Irwin v. Bailey*, 72 Ala. 467, says: "There is no class of cases to which the jurisdiction of a court of equity extends that the maxim, 'He who seeks equity must do equity,' is more rigidly applied. Hence it results that the contract or agreement which the court is asked to enforce specifically must not only be certain, fair, just, reasonable, and equal in all its parts and terms; must not be merely voluntary, but founded upon a valuable and adequate consideration; and it must be mutual in its operation and effect. As is said by Prof. Pomeroy: "The contract must be of such a nature that both a right arises from its terms, in favor of either party against the other, while the corresponding obligation rests upon each towards the other, and also that either party is entitled to the equitable remedy of a specific execution of such obliga-

[Dimmick ,et al. v. Stokes.]

tion against the other contracting party.' Pomeroy on Contracts, § 162. Or, as is said in another work: 'A contract, to be specifically enforced by the court, must be mutual; that is to say, such that it might, at the time it was entered into, have been enforced by either of the parties against the other of them. Whenever, therefore, whether from personal incapacity, the nature of the contract, or any other cause, the contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other, though its execution in the latter way might in itself be free from · the difficulty attending the execution in the former.' Fry on Specific Performance, § 286. 'I have no conception,' said Lord Redesale, in *Laurence v. Butler*, 1 Sch. & Lef. 13, 'that a court of equity will decree a specific performance except when both parties have a right by the agreement to compel a specific performance according to the disadvantage which might be supposed to have been derived from it." Were it otherwise, a specific performance might be decreed when, if it was disadvantageous to the party complaining, he could not, at the instance of the other party, be compelled to perform. There are some cases in which a want of mutuality in the contract at the time it was entered into is not regarded as an insuperable obstacle to specific performance. These rest upon their own peculiar circumstances and facts. Performances by the one party, and its acceptance by the other, may entitle the party performing to the assistance of the court, though he could not have been compelled to perform. The contract of an infant is voidable; but, after arriving at age, he may affirm and enforce it, notwithstanding the original want of mutuality. The class of cases to which we refer are exceptions to the general principle, and involve consideration which justify the court in the specific performance of the contract.

But when the contract, in its nature and character and according to the intention of the parties. involves and imposes a reciprocity of obligation and duty, there is no authority for enforcing specific performance of it in favor of a party who on his part has not performed, cannot be compelled to perform, and is not capable of performing.—*Cooper v. Pena,* 21 Cal. 404."

There is nothing in the contract in the case at bar so binding on Stokes as would support a special enforcement by the company or J. W. Dimmick against him in case he declined to serve as general manager. Applying the rule to this case, specific performance of the contract, in respect to the only feature thereof of which a breach is claimed, cannot be decreed. Construing the averments of the bill most favorable to the complainant, it merely seeks to reinstate the complainant as general manager of the corporation and to remove Wilson as president, which is not within the powers of a court of equity, in the absence of some special ground of equitable cognizance. It is true the bill avers that it was the opinion of complainant that J. W. Dimmick and Wilson at one time intended to settle the claim of the Mobile & Ohio Railroad at a reduction and make the company pay the claim in full; but it further shows that Dimmick informed complainant that he was not going to charge the company any more than the claim cost him, with legal interest. Nor does the bill aver that it was the purpose or intention of J. W. Dimmick to charge the company with any more than the claim would cost him. He may have had such an intention at one time, yet may have had no idea of doing so at the time the bill was filed, or when he informed the complainant that he was going to charge the company only what the claim cost him and legal interest.

The chancellor erred in not sustaining the motion to dismiss the bill for want of equity, and the decree of the

chancery court is reversed, and one is here rendered dismissing the bill.

Reversed and rendered.

Tyson, C. J., and Haralson, Simpson, Denson, and McClellan, JJ., concur.