## Stewart, *et al. v.* White.

*Bill to Specifically Enforce Contract.*

(Decided November 7, 1914.   66 South. 623.)

*Specific Performance; Contracts; Enforceability.*—Where a contract required a respondent to accept invoices of lumber manufactured by complainant during a period covering nearly five years, such contract cannot be specifically enforced, since the contract requires a succession of acts continuing through a considerable period of time, the performance of which would require the protracted supervision of the court, and the officers thereof, which will not be undertaken unless the public interest so requires.

(McClellan, J., dissents.)

APPEAL from Morgan Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by J. R. White against S. E. Stewart, Stewart Brothers, and the members composing the firm, to specifically perform a contract. From a decree granting a temporary mandatory injunction, respondents appeal. Reversed and remanded.

The bill asked for a receiver to take charge of the property of the Stewarts, and that the receiver sell or sequester so much of the property as may be necessary to finance complainant's enterprise, according to the contract, and to restrain and enjoin each and all of the respondents from refusing to accept all invoices for the output of complainant's mill, and from refus-

[Stewart, et al. v. White.]

ing to advance the face value thereof in cash to complainant, and from attempting to foreclose the mortgage in any way, and for general relief.

TIDWELL & SAMPLE, and O. KYLE, for appellants.

E. W. GODBEY, for appellee.

DE GRAFFENRIED, J.—We deem it necessary to discuss only one question presented by this record. That question grows out of the following facts:

S. E. Stewart sold to J. R. White certain land in the town of Hartselle, Ala., upon which was situated a stave mill. White made to Stewart a mortgage for $5,700 on the property, $4,750 of which was for the purchase price of the property, and $950 was for cash furnished by Stewart to White to purchase new machinery for the mill. When this mortgage was made Stewart and White agreed that Stewart, and "also the firm of Stewart Bros., * * * shall accept all invoices for the entire output of said stave mill plant, *and advance* the said J. R. White the face value of said *invoices in cash,* less 2 per cent.; the said White guaranteeing the correctness and payment of said invoices, and further agreeing to collect and immediately turn over to the said S. E. Stewart or Stewart Bros., as the case may be, all checks, notes, and cash received by him for and on said invoices so purchased by the said S. E. Stewart; that this agreement, as to said invoices, shall remain in full force and effect until the payment and satisfaction" of said $5,700 mortgage. The said $5,700 mortgage debt was to be paid by White in 57 equal monthly installments. The first installment was to be paid on January 1, 1913, and the last installment 57 months thereafter.

13—189

[Stewart, et al. v. White.]

1. Proceeding upon the theory that S. E. Stewart had the authority to make the above agreement on behalf of Stewart Bros., of which he was a member, the question is: Do the facts present a case in which a court of equity will specifically enforce the said agreement, either as against S. E. Stewart or Stewart Bros., by decreeing that they "*accept* all invoices for the entire output of said stave mill plant, and *advance* the said J. R. White the face value of said invoices in cash, less 2 per cent.; the said J. R. White guaranteeing the correctness and payment of said invoices"? This quoted portion of the agreement was to cover the entire period of 57 months—i. e., until the mortgage debt was paid; and the question is: Will a court of equity specifically enforce that agreement? In other words, will a court of equity, by the remedy which has been provided for specifically enforcing contracts, undertake to require either S. E. Stewart, or Stewart Bros., or any person standing in their shoes, or in the shoes of either of them, to accept, as they are presented, all invoices for the output of said mill, for the period indicated, and advance to the said White, in cash, the face value of such invoices, less 2 per cent? We are satisfied that White would not have made the contract, except for the quoted portion of the agreement, and we discuss this question in the light of that situation.

2. "Where the contract, by its terms, stipulates for a *succession* of acts, to continue through a considerable period, the performance of which would require the protracted supervision and direction of the court, a decree for specific performance is generally refused." —26 Am. & Eng. Ency. Law (New Ed.) p. 95, subd. 12, and authorities cited in note 4; *Roquemore & Hall v. Mitchell Bros.*, 167 Ala. 475, 52 South. 423, 140 Am.

St. Rep. 52; *Tombigbee Valley Ry. Co. v. Fairford Lumber Co.*, 155 Ala. 575, 47 South. 88; *Electric Light Co. v. Mobile & S. H. Ry. Co.*, 109 Ala. 19 South. 721, 55 Am. St. Rep. 927. The exceptions to the above rule seem to be confined to cases in which the *public* has an interest. "The exception to the general doctrine has been said to be founded upon the rights of the public rather than those of the plaintiff; the theory being that when the inconvenience of the courts in acting is more than counterbalanced by the inconvenience of the public if they do act, the interest of the public will prevail."—16 Am. & Eng. Ency. Law (2d Ed.) p. 96, and authorities cited in note 3.

3. We have not, in the above opinion, undertaken to give the reasons underlying the above rule. The reasons for the rule are fully and plainly set forth in the above-cited cases of *Roquemore & Hall v. Mitchell Bros.*, *Tombigbee Valley Ry. Co. v. Fairford Lumber Co.*, and *Electric Light Co. v. Mobile & S. H. Ry. Co.* For the reasons set out in the opinions in these cases, and especially those set out in *Electric Light Co. v. Mobile & S. H. Ry. Co.*, *supra*, courts of equity, in cases like the present, refuse to assume jurisdiction to specifically enforce contracts, but remit the parties aggrieved to their actions for damages in courts of law. The enforcement of the rule in the instant case may result in a hardship to appellee; but the rule is as we have stated it to be, and appellee has his action at law for such damages as he may legally have suffered by reason of the breach of the contract.—*Dimmick v. Stokes*, 151 Ala. 150, 43 South. 854.

The above being the conclusions of this court, it follows that the chancellor erred in granting the temporary writ of injunction. The decree of the court

below is therefore, reversed, and the cause is remanded. Reversed and remanded.

ANDERSON, C. J., and MAYFIELD, SAYRE. SOMERVILLE, and GARDNER, JJ., concur. McCLELLAN, J., dissents.