(113 So. 592)

## AMERICAN BOOK CO. et al. v. STATE.
### (3 Div. 801.)

Supreme Court of Alabama.   June 15, 1927.

**1. Injunction ⬅148(1)—State suing in own name for specific performance and injunction need not give bond (Code 1923, § 5644).**

In suit by state in its own name against book company for injunction and specific performance of contract to furnish school books for state, state being real party in interest, was not required to give bond or security, in view of Code 1923, § 5644.

**2. Specific performance ⬅106(1)—States ⬅101—In state's action against book company and surety to specifically perform contract to furnish school books, there was no misjoinder of parties defendant.**

In action by state against book company and surety for injunction and specific performance of contract to furnish school books for state, there was no misjoinder of parties defendant, since undertaking and promise of guaranty were for benefit of state and citizens.

**3. Pleading ⬅8(2)—In suit to specifically perform contract to furnish school books at price established in another state, allegation of conditions there held not demurrable as conclusion.**

In state's action against book company for specific performance of contract to furnish school books at price not exceeding that in state where like conditions existed, allegations that like conditions prevailed in another state, showing systems of distribution in both states, *held* not demurrable as conclusion.

**4. Pleading ⬅8(1), 11—Bill should not state mere conclusions, but need not state evidence.**

Bill in equity should not set forth mere conclusions, but is not required to state mere evidence.

**5. States ⬅100—Provision in state contract for school books for price similar to that established in other states held authorized (School Code 1924, § 387).**

In contract by state for school books, it was proper to insert provision that seller would not sell at lower price in another state, where like conditions of distribution prevailed, in view of School Code 1924, § 387 (Laws 1919, p. 637, art. 23, § 22).

**6. Equity ⬅152—Contract exhibited by bill will be treated as aiding it.**

In suit by state against book company to specifically perform contract to furnish school books at price similar to that charged in other states, contract exhibited by bill and made part thereof will be treated as aiding it.

**7. Contracts ⬅152—Words used in one sense in part of contract are deemed of like meaning in another part.**

Words used in one sense in part of contract are deemed of like meaning in another part of same instrument, where there is nothing in context indicating different meaning.

**8. Bonds ⬅50—Bond or obligation given or undertaken under authority of law must include only matter required by law.**

Bond or obligation given or undertaken under authority of law must not include matter not required by law, and unauthorized provision will be read out of it, while necessary matter not expressed will be read into it.

**9. Evidence ⬅65—Obligors of statutory contracts of suretyship are presumed to know statutory provisions entering therein and to have contracted with reference thereto.**

Obligors of statutory contracts of suretyship are presumed to have known provisions of statute entering therein and to have contracted with reference thereto, since it is rule of general contracts without stipulations to contrary that law of place is implied.

**10. Schools and school districts ⬅167—Delegation by Legislature of authority to select text-books for public schools carries right to exercise necessary discretion and power to end in view (School Code 1924, §§ 365, 372–381, 383, 384, 387, 388, 393, 395).**

Delegation by Legislature to state's administrative agency of authority to select and adopt text-books for elementary public schools on recommendation of state superintendent of education carries right to exercise necessary discretion and power to end in view, in view of requirements of School Code 1924, §§ 365, 372–381, 383, 384, 387, 388, 393, 395 (Laws 1919, pp. 633–639, art. 23, §§ 1, 8–16, 18, 19, 22, 23, 28, 30).

**11. Estoppel ⬅90(2)—Seller of school books, having voluntarily accepted lawful conditions of contract with state, cannot assert state's lack of power to contract.**

Where conditions of contract to furnish school books to state where voluntarily accepted by seller and were not contrary to law, seller will not be heard to say that state lacked power to make such contract, since, not being misled, it was bound.

**12. Injunction ⬅57—State held entitled to resort to injunctive relief for specific performance of contract to furnish school books (School Code 1924, § 387).**

State *held* entitled in proper case to resort to equity for injunctive relief against book company for specific performance of contract to furnish school books, in view of School Code 1924, § 387 (Laws 1919, p. 637, art. 23, § 22), authorizing action for damages.

**13. Injunction ⬅59(1)—Specific performance ⬅114(1)—Bill by state for injunction and specific performance of contract to furnish school books for year held not demurrable as requiring court to superintend performance for long period.**

Bill in equity by state against book company for injunctive relief and specific performance of contract to furnish school books for year *held* not demurrable on ground that court would be required to unduly and for long period superintend performance of contract.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**14. Injunction ⬅24—Violation of unequivocal provisions of contract to furnish school books to state at certain price should be enjoined without balancing convenience.**

Where in suit against book company, in which it sought injunction and specific performance of contract to furnish school books at price similar to that charged in other states, showed violation of contract provisions, there should be no balancing of convenience in issuing injunction.

**15. Injunction ⬅146—Temporary injunction may properly be granted restraining violation of contract to furnish school books to state at certain price, notwithstanding denials of answer.**

Temporary injunction may be properly granted restraining violation of unequivocal provisions of contract to furnish school books to state at price similar to that charged in other states, notwithstanding denials of answer, where case of discrimination as applied to contract is sufficiently shown by bill and its exhibits.

**16. States ⬅94—In contract for school books for state, state board of education may require provision for state depository to secure prompt distribution (School Code 1924, §§ 393, 395, 397).**

In making contract for school books for state, insertion of provision for state depository was within powers of state board of education to secure prompt distribution, and within its discretion, in view of School Code 1924, §§ 393, 395, 397 (Laws 1919, pp. 638, 639, art. 23, §§ 28, 30, 31).

**17. Evidence ⬅424—Language of Tennessee school book contract is not conclusive between state of Alabama and seller of books as to whether conditions of distribution were similar within contract requiring similar prices.**

In determining whether conditions of distribution of school books in Tennessee were same as in Alabama within contract requiring similar prices, language of Tennessee contract is not conclusive between state of Alabama and seller of books, since rule excluding parol evidence to vary written instrument applies only to parties to contract and privies.

**18. Injunction ⬅126—Specific performance ⬅119—State alleging that book company breached contract by selling cheaper in another state under like conditions of distribution must show like conditions.**

In suit by state against book company for injunction and specific performance of contract to furnish school books at prices similar to those charged in other states, in which complainant alleged breach by sale at lower price in another state having like conditions of distribution, complainant had burden to show like conditions, including proof that depository system in the other state was not less expensive.

**19. Injunction ⬅128—Specific performance ⬅121 (3)—State alleging breach of school book contract by sale at lower price in another state held not to have shown like conditions of distribution in such state (Code 1923, §§ 8304, 8305).**

In suit by state against book company for injunction and specific performance of contract to furnish school books at prices similar to those charged in other states, submitted under Code 1923, §§ 8304, 8305, on bill, demurrer, answer, and affidavits, complainant *held* not to have sustained burden of showing alleged breach in that like conditions of distribution existed in another state where books were sold at lower price.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Bill in equity by the state of Alabama against the American Book Company and another for injunction and to enforce specific performance of a contract. From a decree granting a preliminary injunction and overruling a demurrer to the bill, respondents appeal. Reversed and remanded.

Taft, Stettinius & Hollister, of Cincinnati, Ohio, Knox, Acker, Sterne & Liles, of Anniston, and Steiner, Crum & Weil, of Montgomery, for appellants.

It is not a sufficient averment to say that conditions which prevail in Tennessee are like the conditions prevailing in Alabama, without specifying what these conditions are and wherein they are like. Carmelich v. Mims, 88 Ala. 335, 6 So. 913; Watts v. Frazer, 80 Ala. 186; Ala. Jail & Bridge Co. v. Marion County, 145 Ala. 684, 40 So. 100; McAllister-Coman Co. v. Matthews, 150 Ala. 167, 43 So. 747; Ala. State Fair v. Ala. Gas Co., 131 Ala. 256, 31 So. 26. Where words are used in one sense in one part of a contract, they are deemed to have been used in the same sense in another part of the instrument, where there is nothing in the context to indicate otherwise. 13 C. J. 532. The determination of the Tennessee contract is not limited to the language of the contract, but it is permissible to show by evidence, parol or otherwise, what the contract really is. Mortgage Co. v. Cody, 135 Ala. 622, 33 So. 832; Robinson v. Moseley, 93 Ala. 70, 9 So. 372; Coleman v. Pike Co., 83 Ala. 326, 3 So. 755, 3 Am. St. Rep. 746; 22 C. J. 1292. A court of equity will decree specific performance only when it can dispose of the matter in controversy by a decree capable of present performance. It will not decree a party to perform a continuous duty extending over a series of years, but will leave the aggrieved party to his remedies at law. Stewart v. White, 189 Ala. 192, 66 So. 623; Pomeroy on Contr. §§ 22, 114, 312; Waterman, Specif. Perf. § 49; 1 Beach, Inj. § 443; Iron Age Pub. Co. v. West Union Tel. Co., 83 Ala. 498, 3 So. 449, 3 Am. St. Rep. 758; S. & N. A. R. Co. v. H. A. & B. R. Co., 98 Ala. 400, 13 So. 682, 39 Am. St. Rep. 74; Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955; Richmond v. Dubuque & S. C. R. Co., 33 Iowa, 422; Port Clinton R. Co. v. Cleveland & T. R. Co., 13 Ohio St. 544; Johnson v. Shrewsbury v. N. R. Co., 3 De Gex, M. & G.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

914; Blackett v. Bates, L. R. 1 Ch. App. 116; Tombigbee Co. v. Fairford Lbr. Co., 155 Ala. 575, 47 So. 88; Wingo v. Hardy, 94 Ala. 190, 10 So. 659; Shubert v. Woodward (C. C. A.) 167 F. 47; Blue Point Oyster Co. v. Haagenson (D. C.) 209 F. 278. A contract cannot be specifically enforced when there is no mutuality of remedy. Pantages v. Grauman (C. C. A.) 191 F. 323; Marble Co. v. Ripley, supra. The clause in the contract upon which the state relies was inserted by the Attorney General without authority of law and should be rejected as surplusage. School Code, §§ 386–394; Miller v. Bonner, 163 La. 332, 111 So. 776; Whitted v. Governor, 6 Port. 335; Howie v. State, 1 Ala. 113; U. S. F. & G. Co. v. Union T. & S. Co., 142 Ala. 532, 38 So. 177; Hohenberg & Co. v. Hendrix, 213 Ala. 406, 105 So. 195. Like conditions do not prevail in Alabama and Tennessee. The Tennessee contract is a wholesale contract. Excessive penalties in the Alabama contract create an unlike condition. The evidence for defendant book company shows categorically that it does pay more for distribution in Alabama; while the evidence for the state consists of mere opinions and general conclusions.

Charlie C. McCall, Atty. Gen., and Thos. E. Knight, Jr., Asst. Atty. Gen., for the State.

The averment that like conditions prevail in Alabama and Tennessee is not a conclusion but a statement of fact. The bill seeking to enjoin respondent from violating its contract to the continuing and irremediable injury of every patron who buys its books has equity. Mobile Elec. Co. v. City of Mobile, 201 Ala. 607, 79 So. 39; M. & O. R. Co. v. Zimmern, 206 Ala. 37, 89 So. 475, 16 A. L. R. 1352; Tidwell v. Hitt Lbr. Co., 198 Ala. 236. 73 So. 486, L. R. A. 1917C, 232. The injury is irreparable to the patrons of the schools, for, if the state attempted to redress the wrong by an action for damages, the amount recovered would inure to the benefit of the board of education and could not be reimbursed to the patrons for excess amounts paid by them. The state has authority to maintain the suit. School Code, §§ 383, 384; Mobile Elec. Co. v. City of Mobile, supra. Defendant is a public service corporation to all intents and purposes. Mobile Elec. Co. v. City of Mobile, supra. The bill is not subject to the demurrer that a court of equity would have to superintend the performance of the contract over a period of years. May v. Lowery, 214 Ala. 230, 107 So. 67; Best v. Parsons, 207 Ala. 115, 92 So. 267; Brasfield v. Burnwell Coal Co., 180 Ala. 185, 60 So. 382; Woolworth Co. v. Nelson, 204 Ala. 172, 85 So. 449, 13 A. L. R. 820; Hendricks v. Hughes, 117 Ala. 591, 23 So. 637; McDaniel v. Callan, 75 Ala. 327. Where the bill contains equity, the issue is mainly one of fact. Kirk v. McTyeire, 209 Ala. 125,

95 So. 361; Lynne v. Ralph, 201 Ala. 535, 78 So. 889. The temporary injunction should be granted, notwithstanding denial in the answer. Rice v. Davidson, 206 Ala. 226, 89 So. 600. The affidavits show that the Alabama method is as cheap, or cheaper, than the method of shipping direct to local dealers.

THOMAS, J. [1] The cause was submitted on application for order or temporary mandatory injunction under sections 8304, 8305, of the Code of 1923. The hearing was on the bill, demurrer, and answer, and the respective affidavits, resulting in injunction as prayed. The state was not required to give bond. The title to the suit, the recitals and substance of the bill and the prayer thereof, show that the state is the real party complainant and suing in its own name for injunction and specific performance of the contract for the state. It was not required to give "bond or security." Section 5644, Code; Gaston v. State, 88 Ala. 459, 7 So. 340; McLendon v. Empire Min. Co., 199 Ala. 482, 74 So. 937.

[2] The misjoinder of parties defendant is presented by demurrer. In the averred contract with the state the defendants become bound within their respective undertakings. There was no misjoinder of parties; the undertaking and the promise of the guaranty were for the benefit of the state and its citizens. Ala. Power Co. v. Hamilton, 201 Ala. 62, 77 So. 356; Fite v. Pearson et al., 215 Ala. 521, 111 So. 15.

[3] Waiving for the moment a construction of the term inserted in the contract, we now refer to the ground of demurrer challenging the sufficiency of the allegations in regard to conditions prevailing in other states—the averment that like conditions, within contract stipulations, prevail in Alabama as in Tennessee. The allegations of sections 6 and 7 of the bill, following the averment of the specific term of the contract and the statute, as challenged conclusions, are as follows:

"That during the month of June, 1925, the respondent American Book Company entered into a contract with the state of Tennessee *where like conditions prevail as are prevailing in Alabama (as that term is used to mean in both the Alabama law and contract)* to supply through merchants or dealers in various localities in the state of Tennessee during a period of five years. " * * * Demanded that the said American Book Company sell in Alabama at the lower price given Tennessee; that the respondent American Book Company refused to sell the same book in Alabama at as low a price as it was sold in Tennessee, and assigned as its reason for refusing to comply with the demand of Alabama that like conditions did not prevail in Alabama as in Tennessee in this, that the Alabama contract required distribution through a 'central depository' to the 'local depository' or the retail agent of the respondent American Book Company, whereas in Tennessee it was optional with the company to maintain, or not,

as it saw fit, a central depository. It is not disputed that in all other respects than the one just mentioned like conditions prevail in Alabama as prevail in Tennessee, as that term is used in the Alabama law and contract." (Italics supplied.)

The foregoing illustrate that said pleading was not a conclusion which violates the rule obtaining in equity.

Counsel make the concession that it is often difficult to determine when an averment in a pleading is a permissible statement of fact and attending conclusion, and that each pleading is to be tested by its particular allegations. This is applicable to the pleading before us, and the general rule that sufficient information can be given as to the matter to be traversed or confessed and avoided. Such a pleading is required to show that plaintiff has a right to inform a defendant of the true nature of the case he is to defend. Cockrell v. Gurley, 26 Ala. 405; Manchuria Co. v. Donald & Co., 200 Ala. 638, 77 So. 12; Frederick v. Hartley, 202 Ala. 43, 79 So. 381; Eutaw Co. v. Town of Eutaw, 202 Ala. 143, 79 So. 609; Ala. State, etc., Ass'n v. Ala. Gas Fixture & Plumbing Co., 131 Ala. 256, 261, 31 So. 26; N. C. & St. L. R. Co. v. Parker & Co., 123 Ala. 683, 690, 27 So. 323.

It is true that this court has held in law cases that pleas are bad as conclusion merely, setting up that the goods delivered were different from the agreement of sale (McAllister-Coman Co. v. Matthews, 150 Ala. 167, 43 So. 747), the house was smaller than provided in the contract (Ala., etc., Co. v. Marion Co., 145 Ala. 684, 40 So. 100), the policy delivered and that agreed upon were different (Carmelich v. Mims, 88 Ala. 335, 6 So. 913) "failure of consideration" or "fraudulent misrepresentation" merely (Phœnix Ins. Co. v. Moog, 78 Ala. 284, 301, 56 Am. Rep. 31), were conclusions; and in equity that the averment that the purported final settlement of estate was not final, not stating the facts to the contrary effect was a conclusion (Watts v. Frazer, 80 Ala. 186); and in Moody v. Moody, Trustee (Ala. Sup.) 112 So. 752,[1] the averment of the sale of real property was with fraudulent intent and void, or made with intent to hinder, delay, or defraud creditors when that purpose is known to the grantee was not a conclusion of the pleader.

[4] It is sufficient to say, generally, that a bill in equity should not set forth mere conclusions on the one hand (Cameron v. Abbott, 30 Ala. 416; Lipscomb v. McClellan, 72 Ala. 151; Schloze v. Steiner, 100 Ala. 148, 152, 14 So. 552; Flewellen v. Crane, 58 Ala. 627), and on the other, it is not required to state "mere evidence" (Cabbell v. Williams, 127 Ala. 320, 28 So. 405; Hall & Farley v. Henderson, 126 Ala. 449, 484, 28 So. 531, 61 L. R. A. 621, 85 Am. St. Rep. 63; Williams v. Spragins, 102 Ala. 424, 15 So. 247). In Christian v. Am.

F. L. & M. Co., 92 Ala. 130, 9 So. 219, the averment that "said deed did convey the interest" of Mary C., held sufficient, though averred by way of conclusion, and that fraud shown by "general averments of facts, from which, unexplained, a conclusion of fraud arises, are sufficient." Williams v. Spragins, 102 Ala. 424, 430, 15 So. 247, 249; Pickett v. Pipkin, 64 Ala. 520; Burford v. Steele, 80 Ala. 148; Pollak v. Searcy, 84 Ala. 262, 4 So. 137.

In Overton v. Moseley, 135 Ala. 599, 607, 608, 33 So. 696, 698, the rule is stated as follows:

"In McKinley v. Irvine, 13 Ala. 693, this court stated as a rule of equity pleading, 'the complainant must show by his allegations in the bill that he is entitled to the relief which he seeks, and if he fails to set forth every essential fact necessary to make out his title to maintain the bill the defect will be fatal.' In Cockrell v. Gurley, 26 Ala. 405, it was said to be a rule of universal application in equity as at law that 'the title of the plaintiff should be stated with sufficient certainty and clearness to enable the court to see clearly that he has such a right as warrants its interference, and the defendant to be distinctly informed of the nature of the case he is called upon to defend.' These rules have been generally recognized and upheld. See Rapier v. Gulf, etc., Co., 64 Ala. 330; Goldsby v. Goldsby, 67 Ala. 560; S. & M. R. Co. v. Lancaster, 62 Ala. 555; 1 Dan. Ch. Pr., 314."

This rule has been adhered to by this court in Powell v. Labry, 210 Ala. 248, 97 So. 707; Heflin v. Heflin, 208 Ala. 69, 72, 93 So. 719. It is called the rule of "common sense" applied to the facts of each case. Sims, Ch. Pr. pp. 124, 199. The bill was free from demurrer that mere conclusions are averred of like conditions in Alabama and Tennessee.

[5] It is further insisted by appellants that provisions not authorized by law to be inserted in the contract were inserted by the Attorney General, and on such alleged unauthorized provisions the state relies for relief. The statute set out is as follows:

"It shall be specifically stipulated in each contract that the contractor is not furnishing under any contract executed during the twelve months preceding any state, county or school district in the United States, where like conditions prevail as are prevailing in this state under this article, the same book or books as are embraced in said contract, at a price below or less than the price stipulated in the said contract." School Code, § 387.

And excerpts from clauses of the contract are:

"That the said party of the second part further covenants and agrees that the books or publications furnished under this contract in the editions contracted for shall at all times during the existence of the same be equal in all respects to the specimens or sample copies furnished with his (or its) bid and now on deposit in the office of the state superintendent of edu-

---

[1] Ante, p. 156.

cation of Alabama, and the state shall have the option of using any revised editions of the said books at whatever contract prices may be stipulated in any contract hereafter entered into between the party of the second part and any other state, county or school district *where like conditions of distribution prevail as are prevailing in the state of Alabama.*

" * * * Party of the second part further covenants and agrees that he (or it) *is not now* furnished under contract executed within twelve months next preceding the execution of this contract ' any state, county or school district in the United States, *where like conditions prevail as are prevailing in this state and brought about by the said Act of the Legislature* under the authority of which this contract is executed, and books or publications embraced in this contract at a price below or less than the price stipulated in this contract, and the said party of the second part covenants and agrees that, *if at any time during the period of this contract the books or publications herein named shall be contracted for a price to any state, county or school district in the United States where like conditions prevail as are prevailing in Alabama, lower than the price agreed upon in this contract, then that lower price shall become the contract price between the party of the first part and the party of the second part herein.*" (Italics supplied.) Sections 3 and 4 of Exhibit A.

[6] The contract exhibited by the bill and made a part thereof will be treated as aiding the same. Pool v. Menefee, 205 Ala. 531, 88 So. 654.

[7] The bill, considered with the exhibit and several averments of like conditions prevailing, must be construed to mean like conditions of distribution in Tennessee, or like conditions brought about by the contract entered into under the act of the Legislature— the authority by which the contract is executed. This results from the rule that words used in one sense in a part of a contract are deemed of like meaning in another part of the same instrument where there is nothing in the context indicating a different meaning. 13 C. J. p. 532, § 491. Thus the material inquiries of like condition or fact, the prices at which certain school books are sold in the state, and the method by which the same are distributed to the patrons required to use the same in public schools, are pertinent.

[8] To an understanding of the contract it must be answered in the first place whether the state had the authority of law to insert the challenged provisions in the contract. The inquiry is necessary under the liability of suretyship and the rule that a bond or obligation given or undertaken under authority of law, must not include matter not provided or required by law, and an unauthorized provision will be "read out of it"; and, the contrary rule that whatever necessary matter is not expressed, yet required to have been incorporated under the law, "will be read into it" and given the effect which in reason and law must have been intended by the parties and into which the statute entered

and became a part of the undertaking. Miller v. Bonner, 163 La. 332, 111 So. 776, 779; 9 Cyc. 582.

[9] The obligors of statutory contracts and suretyship are presumed to have known the provisions of the statute entering therein, and to have contracted with reference thereto, and with such knowledge and intention bound by the undertaking according to the law. 9 C. J. p. 34, § 56. It is a rule of general contracts, without stipulations to the contrary, the law of the place is implied. Watkins v. Hill, 214 Ala. 507, 108 So. 244; J. R. Watkins Co. v. Pace et al., 212 Ala. 63, 101 So. 758.

The purpose and effect of the statute having application and the insertion of the provision, "while like conditions of distribution prevail," or, "like conditions prevail as are prevailing in this state and brought about by said act of the Legislature under the authority of which the contract is executed," is patent. It was that the patrons and children of the state be protected from extortion or exaction of unreasonable prices by publishers and deals in the sale of school books that the patron was required by law to purchase to be used by a child who attended and enjoyed the benefits of public schools.

Did, therefore, the agents of the states exceed authority in respects indicated by stipulating and contracting to the end in question and as presented by said pleading?

[10] The contract was the result of a reasonable and lawful competition by bid for contract, by the defendant book company with the states or its agencies. The state board of education or text-book committee, or other lawful agency, called for competitive bids for text-books, and had the authority to enter into a proper contract with publishers so successfully competing for the right to furnish the same. This carried the right to award, on reasonable and lawful conditions, to evidence the same by contract, and to duly secure the faithful performance by bond or surety. An important consideration in this undertaking was the reasonable prices to be exacted of the ultimate purchaser. A delegation by the Legislature to the state's administrative agency of the authority to select and adopt text-books for the elementary public schools, upon recommendation of the state superintendent of education, carried the right of exercise of the necessary discretion and power to the end in view. See section 365, School Code of Alabama 1924 et seq., art. 23 (section 1, Acts of 1919, p. 567).

In that selection the book committees are required to take into account the qualities and merits of books, and a part of this to the end to be accomplished, "taking into account the price of said books" required (section 372, School Code, p. 131 [the references now to be made are to the School Code]); if the prices of "desirable books" are satisfactory and not "unreasonably high," or, if not, that if "sat-

isfactory price can be agreed upon by the committee, the same may adopt such book or books" (section 373), advertise and open competitive bids (sections 374, 375), on security exacted (sections 376, 377), and examine carefully in executive session such bids or proposals to determine what books, written or printed in English, shall be adopted, after "taking into consideration the size, quality, including subject-matter, material, printing, binding and the mechanical execution and price," as well as "the general suitability for the purpose desired and intended" (section 378), to make known its decision to the publishers "to whom contracts have been awarded" (section 379).

It is required by sections 380, 381, that:

"The Attorney General of the state shall prepare the said contract or contracts in accordance with the provisions of this article. * * * At the time of the execution of the contract executed in accordance with the provisions of the preceding section, the contractors shall enter into a bond."

Recovery for default may be had and the same be deposited in the state treasury to the credit of the state board of education. Sections 383, 384, of the School Code. It is specifically required by sections 387, 388, of said Code as follows:

"It shall be specifically stipulated in each contract that the contractor is not furnishing under any contract executed during the twelve months preceding any state, county or school district in the United States, where like conditions prevail as are prevailing in this state under this article, the same book or books as are embraced in said contract, at a price below or less than the price stipulated in the said contract, and the state board of education may at any time, upon finding that any book has been furnished at a lower price under contract to any state, county, or school district aforesaid, sue upon the bond of such contractor and recover the difference between the contract price and the lower price at which the book or books have been sold, and in case a contractor shall fail to execute specifically the terms and provisions of his contract, the state board of education shall bring suit upon the contract of such contractor for the recovery of damages, the suit to be in the name of the state of Alabama and the recovery for the benefit of the state board of education.

"The state board of education and any contractor agreeing thereto, may in any manner change or alter any contract, provided a majority of the state board of education shall agree to the change."

[11] This indicates the legislative intent to confer a discretion upon the state board of education to make reasonable changes in the terms and conditions imposed or to be imposed, within the law and to the end in question. All the terms and conditions of such a contract are not specifically indicated; nor were they attempted to be set out by the Legislature. Any reasonable condition, not in violation of express provisions of law, is thus left to the discretion of state officials and the right of contract of the parties competing for the patronage of the people. The requirement that the Attorney General prepare the contract "in accordance with the provisions of this article" is not to be construed as an inhibition against the insertion of any reasonable provisions required and agreed upon that is not contrary to the express terms of the statute. The conditions inserted in the contract of "like conditions," applying before and after contract and for depositories, were not contrary to law, and were well calculated to make effective the general or specific purpose of the statute—in view of section 395, were within the powers of contract as to those engaging in the competitive bids for said public school books and that of the book committee exercising the power and the discretion vested in it by law. The conditions voluntarily accepted by respondents are not contrary to law; it will not now be heard to say that the state lacks power to contract and in making its award. Defendants were not misled and are therefore bound. Hattemer v. Davis, 206 Ala. 613, 91 So. 321; Kahn v. Peters, Adm'r, 104 Ala. 523, 16 So. 524. They contracted under school laws. Sections 387, 393, 395.

[12] What of the right of injunctive relief sought in the interest of a large class of the people of the state, who will be injured if there are violations of defendants' contracts under the circumstances averred? The state may sue, by express terms of school laws, to recover damages under section 387 of the School Code. In a proper case, therefore, it becomes the duty of the state's officials to resort to equity to prevent the damages where the law court is inadequate to the required end, and the inability of the many citizens affected by the violation of the contract made for the general public to seek and secure adequate protection in a law court. In a sense, defendant has put itself in relation to the general public as that of a public service corporation, and will be so regarded and held. This was recognized in Mobile Elec. Co. v. City of Mobile, 201 Ala. 607, 610, 79 So. 39, 42, L. R. A. 1918F, 667, and stated as follows:

"It is insisted that the bill is without equity because it invokes the specific performance of a contract involving the performance of continuous reciprocal duties; that the citizens have a plain and adequate remedy at law; and that the municipality cannot maintain such a bill. There is no merit in this contention as the bill has equity upon the authority of Bienville Water Co. v. Mobile, 112 Ala. 260, 20 So. 742, 33 L. R. A. 59, 57 Am. St. Rep. 28, and the well-considered case by the Maryland court of Washington Water Co. v. Mayor of Hagerstown, 116 Md. 497, 82 A. 826, Ann. Cas. 1913C, 1022. While the bill is in the nature of a bill for specific performance of a contract, it does not call for the continuous performance of same by all the parties thereto running through a series of years; it seeks by the negative means of injunction the enforcement of a public duty by preventing the respondents from shutting off

the lights of the citizens who comply with the terms of an existing contract placing on the respondent the discharge of a public duty."

See, also, M. & O. R. Co. v. Zimmern, 206 Ala. 37, 89 So. 475, 16 A. L. R. 1352; Tidwell v. Hill Co., 198 Ala. 236, 73 So. 486, L. R. A. 1917C, 232; Woodstock Co. v. Quinn, 201 Ala. 681, 79 So. 253.

The resort to equity for injunctive relief under the circumstances and averred facts did not subject the bill to appropriate grounds of demurrer directed to that phase of the pleading.

[13] Likewise, the bill is not subject to demurrer for that the court would be required to unduly and for a long period to superintend performance of the contract. It sought to restrain the alleged violations of contract. May v. Lowery, 214 Ala. 230, 107 So. 67; Best v. Parsons, 207 Ala. 115, 92 So. 267. Such relief was given in Mobile Electric Co. v. Mobile, supra, where a 30-year contract period existed; and in Brasfield v. Burnwell Coal Co., 180 Ala. 185, 60 So. 382, the negative covenants of a mining lease and the use of lands for the purpose of mining coal on certain lands and by way of proposed entries, and the period of the lease was 20 years or until the coal and mineral were worked out, was the subject of protection. It was declared that the chancellor had erred in declining to issue a temporary writ of injunction restraining respondent from using complainant's lands for the purpose of mining coal from the Bryan lands. In F. W. Woolworth Co. v. Nelson, 204 Ala. 172, 85 So. 449, 13 A. L. R. 820, the bill for injunction was to stay waste as affecting the leased property where the period of the lease was ten years. 33 A. L. R. 465, 497; Hendricks v. Hughes, 117 Ala. 591, 23 So. 637, affected the diminution of water power. Lowery v. May, 213 Ala. 66, 104 So. 5; McDaniel v. Callan, 75 Ala. 327.

A case cited by appellants on the general doctrine that courts of equity will decree specific performance only where it can dispose of the matter in controversy by decree capable of present performance (Stewart v. White, 189 Ala. 192, 195, 66 So. 623), involved the affirmative acts of acceptance of invoices for the entire output of a stave mill and advances on the face value of the invoices in cash, etc. And it was there expressly stated that:

"The exceptions to the above rule seem to be confined to cases in which the public has an interest, 16 Am. & Eng. Ency. Law (2d Ed.) p. 96, note 3."

This exception was applied in Mobile Elec. Co. v. Mobile, 201 Ala. 607, 79 So. 39, L. R. A. 1918F, 667.

[14] There should be no balancing of convenience in this case where there is an avowal in the answer that there will be a continuation of the violation of unequivocal contract provisions of defendants with the state and where the preservation of the clear legal rights of the state and the school children thereof are involved—that is if the act complained of violates such a legal right secured to the state and its inhabitants. White v. Harrison, 202 Ala. 623, 81 So. 565; M. & O. R. R. Co. v. Zimmern, 206 Ala. 37, 89 So. 475, 16 A. L. R. 1352. It is in the exercise of a sound discretion in granting or withholding a temporary injunction that the courts have balanced probabilities of damages to the parties in the use or denial thereof of their properties. East v. Saks, 214 Ala. 58, 106 So. 185; Woodstock Operating Corp. v. Quinn, 201 Ala. 681, 79 So. 253; Macher v. Farmers', Etc., Co., 203 Ala. 601, 84 So. 845; Montgomery Enterprises v. Empire Theater Co., 204 Ala. 566, 86 So. 880, 19 A. L. R. 987; Rice v. Davidson, 206 Ala. 226, 89 So. 600. The bill is not subject to such ground of demurrer.

[15] Respondents' answer shows that it will maintain the prices complained, and asserts the right of inequality by way of averred unlike conditions as to the respective states of Alabama and Tennessee and their contracts. The duty was upon the state to protect its citizens under the contract, if like conditions exist and there is unlawful discrimination against citizens of this state as compared to Tennessee. And notwithstanding the denials of the answer, if a case of discrimination as applied to the contract is sufficiently shown by the bill and its exhibits as a part thereof, the temporary injunction was properly granted. That is, courts have a large discretion as to restraining orders if the questions of law and fact involved are fairly and duly raised and show the existence of the rights and issues to be tried upon the hearing. Rice v. Davidson, 206 Ala. 226, 89 So. 600; Castleman v. Knight (Ala. Sup.) 110 So. 911.[2] However, where the whole pleading and affidavits are looked to, is such discrimination shown as warranted the instant order?

[16] It should be said that the School Code, §§ 393, 395, and 397, provide specifically for not less than "three depositories or places of sale in each county" where school books are placed on sale to patrons to be arranged for by the contractor, and that the state board of education shall make any "necessary regulations to secure the prompt distribution of the books provided for in this article and for the prompt and faithful execution of all contracts," and to provide for the purchase of books by counties, districts and municipalities "at the regular contract prices less commissions allowed agents or depositories." It is conceded by appellants' counsel that section 395 of the School Code is ample authority for the requirement of a central or general depository and places of distribution of said school books to patrons. The insertion in the contract of the provisions of its section 1 for one state depository by the second party was within the powers of the State Board of Edu-

---

2 215 Ala. 429.

cation' to secure the prompt distribution, and within its discretion as a necessary regulation to the end stated. Section 395, School Code. The like observation applies for the provisions as to municipalities. Section 397. The geographic divisions and municipalities of the two states were well understood by the parties, and such inequalities were not within the terms of the contract as to like conditions. The right to purchase contractor's books at prices secured to such divisions of each state, and whether they did or not so purchase, are immaterial inquiries. To like effect are the respective terms for forfeiture, penalties, etc., for violations of the two contracts.

Acting under the authority of law as to depositories or places of sale of said books, the duly constituted agency of the state contracted with defendant "at the retail contract and exchange prices herein stated * * * and for placing such books on sale through the agencies provided." Section 2 of the contract, Exhibit A. The clauses for equality of prices are contained in sections 3 and 4. The provisions for the depository in section 1 is as follows:

"* * * The party of the second part to establish within the state of Alabama one state depository, the party of the second part hereby agrees to establish and maintain, during the continuance of this contract, within the state, one central state depository at Birmingham, where a stock or supply of said books or publications sufficient to meet all immediate demands shall be kept, which books or publications shall be consigned or sold to such depository; and will further at all times during the continuance of this contract, keep the books or publications, hereinafter named, on sale in sufficient quantity to meet all immediate demands, at not less than three places in each county in the state of Alabama, and the state board of education may require such books to be placed in more than three places in each county, and may designate such additional points for depositories, which books or publications shall be supplied either by sale or by consignment to said places in each county from such state depository, provided that such state depository shall be permitted subject to the approval of the state board of education, to designate the city, town or village in the several counties of this state where the said books or publications shall be placed on sale and may make arrangements with a merchant or other person therein for the handling and distribution of same, subject to the approval of the state board of education, and may change a designation originally made, upon like approval, such books or publications to be either sold or consigned to such merchant or other person, at the option of the state depository."

How does this requirement affect the clause of "like conditions prevailing" as to equality of prices to be maintained by the publisher? We have stated the respective clauses of sections 3 and 4 of the Alabama contract.

The affidavit of Mr. R. A. Clayton contains, among other things the following:

"That he is thoroughly familiar with the methods of distribution of text-books to the pupils. That he is familiar with conditions which obtain in the distribution of books by the system known as 'direct from central depository to dealer.' That he is also thoroughly familiar with the conditions which obtain in the central depository system of distribution. Being familiar with various conditions of distribution, he deposes and says that the system of distribution from the central depository to the local dealer is very much like and practically identical with the system of distribution from publisher to local dealer, except that the central depository represents numerous publishers and he ships books of all publishers in the same manner as a publisher would ship all the books published by himself. That he is also familiar with the conditions obtaining in the distribution of adopted text-books from publisher to central depository. That constant experience has demonstrated that the greater the volume of books shipped to any one point the less is the proportionate expense incident thereto. And that the transportation and expense incident thereto from the publishers to the local dealer by the central depository method of distribution *may be absorbed* to such an extent as to neutralize the effect of the *stopover* and reconsignment by the central depository since the books of several publishers are shipped to the local dealer by the said central depository in the same lot. That, therefore, the cost of distribution and expense incident thereto of the two methods, namely by the central depository method and by the method of shipment direct from the publishers to the local dealer *would very likely not vary materially."* (Italics supplied.)

And his later affidavit says:

"* * * That said company is the central depository for the distribution in the state of Alabama of the school books published by the American Book Company and contracted by said book company with the state of Alabama to be furnished to the public schools of Alabama. That affiant has been familiar with the business of the Educational Exchange Company for the last six years during which the said Educational Exchange Company has maintained a central state depository for the distribution of text-books for the public schools of Alabama and is familiar with the necessary operating expenses of said company in the distribution of said text-books. That the difference between the price paid by the Educational Exchange Company to the American Book Company for the books furnished by said book company and the price at which said books are sold or consigned by the Educational Exchange Company to the local dealers is not more than is necessary to reasonably compensate said Educational Exchange Company for the necessary expense incurred and the necessary services rendered in connection with the distribution of said text-books. That the Educational Exchange Company could not afford to render the service that it renders as the central depository for less than it receives on the books which are distributed through it and that in the opinion of the affiant the American Book Company could not contract with any other responsible person or dealer in the state of Alabama to act as the central depository and to render the necessary service as such deposi-

tory for less than the amount received by the said Educational Exchange Company for the services rendered by it as such said depository."

The affidavit of Hon. R. E. Tidwell is to the effect:

" * * * That some of the publishers under contract to furnish books adopted for use in both Alabama and Tennessee are maintaining in Tennessee a central depository at their own election, and are selling the same books at the same prices to patrons in both states, among which companies are: Row, Peterson & Company, Chicago, Ill.; Scott, Foresman & Co., Chicago, Ill.; Houghton, Mifflin & Co., Boston, Mass.; W. H. Wheeler & Co., Chicago, Ill.; Johnson Publishing Company, Richmond, Va.; J. B. Lippincott & Co., Philadelphia, Pa. That another publisher under contract in both states to supply books to patrons of the public schools in both states, namely, D. C. Heath & Co., of New York City, and Atlanta, Ga., are not maintaining a central depository in Tennessee, but have recently agreed to furnish the same books at the same prices to the patrons in both states. * * * That a majority of the publishers prefer the central depository method of distribution; that it is obvious in his opinion that a publisher has less total cost in the matter of distribution when local accounts with several hundred local agencies are handled by a state central depository, under bond for payment of all costs of collection, etc., than it would be to maintain this service at the general office of the publisher."

Mr. Edgar E. Wheeler states:

"The company has preferred to distribute its books through a central depository because it feels that the overhead expense is much less in handling the one account than it would be in handling hundreds of accounts with the local dealers of the state and also because the central depository assumes all financial responsibility for the accounts with the local state dealers. For the reason that the central depository assumes this financial responsibility and also performs the service for the company in distributing the books, the company has always felt that the cost of maintaining the central depository should be paid by the publisher and not be added to the price of the book to the purchaser."

The witness, Mr. Gordon M. Jones, says that his company "in some states delivered its books to the individual dealers, and in some states handles them through central state depositories; that in each and every case the net wholesale price of any particular book to the dealer in quantity lots is the same from the point of distribution; that where distribution is made direct to the dealer from the Chicago office, the net wholesale price is f. o. b. Chicago, and that where distribution is made through a central depository, such as the one at Birmingham, the net wholesale price is f. o. b. the depository at Birmingham." He further states that his company "has always considered the depository's commission where the depository distribution system is in use, to be a legitimate charge against the publisher's distribution expense item, rather than a charge to be paid by the purchaser of the books; further, said company has always considered that, due to the large volume of the state contract business and the fact that the central depository admits of making carload shipments rather than L. C. L. shipments, the freight charge to the central distribution point is one which should, as well, be borne by the publishing house."

The deposition of Mr. A. T. Allen, the superintendent of public instruction of North Carolina, says that defendant under "contract automatically reducing the prices of textbooks" in action brought in the courts of North Carolina for mandatory injunction "to put into effect the prices of such books allowed by it in Tennessee, * * * final decree was entered in said superior court * * * by consent of all parties, putting into effect * * * the retail prices for which it had sold books in Tennessee, to wit, Essentials of Geography, Book 1, $1.21; Book 2, $1.70," and which prices have since prevailed in this state as to said publications by defendant. The affidavit as to the result of the suit in North Carolina does not show a decree under like statute as Alabama and that the subject-matter was the same. And Mr. George W. Duncan says:

"That he is familiar with the different methods of distribution of school text-books under state adoption in the different states where text-books are adopted by said states, and that it is his opinion that the method of distribution through central or state depositories, as books are now being distributed in Alabama by central depositories, is the most efficient and economical method both for the publisher and the patrons of the public schools."

Respondents' answer is verified. Its affidavits of Harned and Howe are to the effect that this publisher made contracts for said books in Alabama and Tennessee; that thereafter he called attention to authorities in Tennessee that the contract was not wholly in accord with terms of bid accepted; that it was corrected, as exhibited to the answer. Mr. Howe says:

" * * * That the method of distribution required by the Alabama contract is materially different and far more expensive to the American Book Company than the method required in the Tennessee contract for several reasons. Under the Alabama system the American Book Company is required to maintain or contract with a *central depository at Birmingham* and maintain there a *complete stock of books* which may be required for the purposes of said contract. This requires that the books be shipped from the American Book Company's plant at Cincinnati, unloaded at Birmingham, stored in such central depository, *shipped out from said depository to the local dealer,* unloaded at point of destination, and held in stock by said local dealer until called for by prospective purchasers. To comply with this requirement the American Book Company is compelled to pay and does pay to a central depository at Birmingham, to wit, the *Educational Exchange Company, a sum equal to 10 per cent.*

*of the list price* of all books handled through **it,** which payment is a reasonable payment for the cost and expense of the service performed by said depository as required by the American Book Company's contract with the state of Alabama, said *depository is required to contract with local dealers in every county in the state of Alabama* for further distribution of said books and is required to pay and does pay to *such local dealers a sum equal to 10 per cent. of the list price of said books* for the services performed by such local dealer, which sum is a reasonable sum for the cost and expense of performing said service in accordance with the requirements of the American Book Company's contract with the state of Alabama. The American Book Company sells said books to said central depository at 25 per cent. off the list price so that the books reach the purchaser in Alabama at 5 per cent. off list price. [Italics supplied.]

"Affiant says that in Tennessee the contract eliminates all necessity of unloading, storing, and reshipping at a central depository, and all books are shipped by the American Book Company direct to local dealers in Tennessee at 25 per cent. off list price. The Tennessee Text-Book Commission allows the local dealer in Tennessee a sum equal to 15 per cent. of the net wholesale price of said books, that is to say, 15 per cent. of 75 per cent. of the list price, or 11.25 per cent. of the list price, so that the retail dealers in Tennessee sell to the purchaser at approximately 86.25 per cent. of list prices. Affiant says that the sum allowed to the local dealer in Tennessee for the distribution of said books is a reasonable allowance for the services required in Tennessee and is in excess of that received by local dealers in Alabama for the same services.

"Affiant says further that it is no more expensive for the American Book Company to ship books direct to local dealers than it is to ship the same to a central depository.

"* * * That the provisions contained in the Alabama contract are similar to provisions contained in contracts made by the American Book Company throughout the entire United States under the laws of the several states. That such provisions are made to prevent discrimination by publishers of school books between different states and school districts in favor of other states and school districts. That in order to comply with such universal requirements the American Book Company bases the price of its books on a uniform price to it f. o. b. point of shipment, which uniform price is 25 per cent. off the list price, and delivers such books to the ultimate consumer where the contract calls for such delivery at said uniform price plus the cost of distribution, and that the only variation in prices throughout the entire United States on books shipped by the American Book Company results from a difference in the cost and expense of the method of distribution required or necessary in any given state."

[17] The rule excluding parol evidence to vary or contradict a written instrument has application to parties and privies and not to controversies between third parties. The language of the Tennessee contract is not conclusive between the state of Alabama and the defendants. British & Am. Mortgage Co. v. Cody, 135 Ala. 622, 628, 33 So. 832; Herzfeld v. Hayne, 200 Ala. 615, 79 So. 973; Formby v. Williams, 203 Ala. 14, 19, 81 So. 682; Jones v. First Nat. Bank, 206 Ala. 203, 89 So. 437. When the Tennessee contract is referred to the advertisement and bid, the affidavits in regard thereto, any uncertainty of meaning, is dissipated, and it is shown to be a contract by wholesale with the book company and by that state.

[18] When the two contracts are carefully considered the Alabama contract requires distribution to local dealers through the state depository at Birmingham; that of Tennessee provides for delivery to local dealers, "price f. o. b. Cincinnati" by wholesale. That is to say, the clause for like prevailing prices of the contract as applied to the material facts in Alabama and Tennessee has not a field for operation or basis of relief in that the conditions of distribution are different and such as to affect the net profit to the publisher. It is insisted by defendants that the method pursued in Alabama is absolute uniformity in price f. o. b. point of manufacture or initial shipment, "to which is added the actual cost of distribution." Alabama requires two dealers through the depository system at Birmingham and the local dealer, while in Tennessee see the shipment is made direct to the local dealers or board, without any intermediate dealer or through only one dealer, as the case may be. The words of equality employed in the Alabama contract take proper account for the difference in the cost of distribution. The words employed may be repeated here—"like conditions of distribution"—like conditions "prevailing in this state and brought about by the said act of the Legislature under authority of which the contract is executed." While the affidavits of defendants show that 10 per cent. of the list price is not an unreasonable charge for the services which the depository performs, yet they are required by the Alabama contract under authority of law to ship to the central depository, and the affidavits do not show that said service is worth 10 per cent. to defendant publisher. This burden is upon the state in discharging its proof of prevailing "like conditions." The affidavit of defendants shows that a "two dealer system" or depository system is more expensive. This is an inference from the existence of extra agent or agents and extra shipments, etc.

The affidavits of the state are statements of general conclusions or observations, without a statement of the exact fact or facts showing a like net cost, and proceed on the assumption that unlike conditions of distribution prevail in the two states. The matter of small packages or large shipments and fewer accounts are not shown to effectuate like conditions. The Tennessee contract f. o. b. Cincinnati recites that it is a wholesale contract (sections 3, 4, 5, 9, and 10), and thus is different from the contract here in Alabama. Its third item is as follows:

"To sell through said merchants and dealers all books provided for in this contract, except as hereinafter specified, at the retail prices named herein, the same being the net wholesale prices. f. o. b. ——, at which said books were bid as shown herein plus fifteen per cent. (15%) of said net wholesale prices, which said latter sum is allowed by the said state text-book commission for the distribution of said books, and which prices are hereinafter shown in columns 3 and 4, paragraph 9, as the retail prices at which the books named will be sold."

If there was any ambiguity it was removed by Exhibit D, and the Tennessee contract as last executed provides a wholesale price with a margin for distribution. Its section 10 in Exhibits C and D being the same, is as follows:

"To immediately reduce the price of any book or books named herein if the said book or books at any time within the period of this contract is or are sold to any other state or to any county, township, merchant or parish of any other state at a lower net wholesale price than that named herein, even though the name and form be changed for the purpose of evading a reduction of the price or prices in other states, counties, townships, parishes, or merchants or dealers in any other states or cities, and to notify the said commissioner of education of such change in price whenever it is made, and the said commissioner of education is hereby authorized to change the price of any book or books named herein whenever it or they are sold at a lower price or prices elsewhere."

To repeat, when the Tennessee contract is referred to the law of that state, the advertisement by the book commission the bid in response thereto, the amended contract, appellants' affidavits and answer, said contract is relieved of any ambiguity that the distribution was direct f. o. b. Cincinnati at wholesale, and not by way of a central depository and a retail contract of sale and exchange price through the agencies made and required in the Alabama contract. The laws of that state (Pub. School Laws, §§ 122, 127, pp. 55–63, inclusive; Pub. Acts 1919, c. 142, p. 524; Pub. Acts 1923, c. 7, pp. 26–30; Pub. Acts 1925, c. 115, p. 313) permitted the book commission to eliminate the requirement of depository intervention and stipulated and secured to the people of that state wholesale prices f. o. b. initial point of shipment.

[19] The burden is on the state to show that like conditions prevail and that there was a discrimination made and contracted against, viz., of distribution, or like conditions brought about by the contract entered into under the act of the Legislature having application. The state has not made out its case on the pleading and preliminary hearing of the facts. The decree is reversed, and the case is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BROWN, JJ., concur.

